ARGUED AND DETERMINED

IN THE

# SUPREME · COURT OF CALIFORNIA,

COMMENCING

# January Term, 1852.

---

## CHARLES GRISWOLD, WILLIAM CAVE and EDWARD MARSHALL, Respondents, v. WILLIAM SHARPE and JOHN BOYD, Appellants.

The Court will not review the facts of a case on an appeal, where there was a conflict of evidence. Nor will the Court review the facts of a case, on the ground that the verdict is contrary to the evidence, unless the record shows a new trial was asked for, and refused in the Court below.

Where the Court below tries the cause without a jury, the proper mode of reserving questions of law, is to ask the Court to decide them, and note the refusal in a bill of exceptions.

A plaintiff suing for an injury from collision, must be faultless. But the neglect of the injured vessel to rig in her jib-boom, as required by the port regulations, will not bar the action, if it be shown that such neglect did not cause the collision; although it may have increased the injury; and it will be presumed the Court below so considered it, in appraising the damage.

When a vessel is properly in charge of a licensed pilot, the owner is not responsible for damages which may ensue from the negligence or misconduct of the pilot.

The responsibility of taking a position or berth for a vessel in port, rests upon the master of the vessel or the harbour master; therefore the *owner* is not exempt from liability for injuries committed by taking an improper berth,

although such berth may have been selected by the pilot who brought the vessel into port.

The process of attachment is a creature of statute, and is a remedy only given in cases of indebtedness, arising upon contract.

Where the Court below has wrongfully refused to dissolve an attachment improperly issued, the Supreme Court will order it dissolved, even if the final judgment is affirmed on a review of the case.

THIS was an appeal from the District Court of the Fourth Judicial District.

The respondents filed their complaint in the District Court, averring themselves owners of the American Barque Carib, — Moore, master; that on the 22d of November, 1850, said barque was properly moored in the harbour of San Francisco, in the berth assigned by the harbour master, and in accordance with the harbour regulations; and was in good condition, and well provided, &c.;—that, on said 22d day of November, the British Ship Edward, whereof the appellant Sharpe, was owner, and the appellant Boyd, was master—anchored within a cable's length of the Carib, contrary to law and the said regulations; and on the turn of the tide, the Edward came in contact with the Carib, doing damage, &c.; that the Carib then hailed the Edward, requesting the latter to shift her moorings, and keep clear of the Carib; which the Edward might have done, but refused or neglected; that on the 27th of November, both vessels retaining the same moorings, the Edward again swung in contact with the Carib, doing damage, &c.,—(describing the injuries;)—that the collision was caused by the fault of the master and crew of the Edward, in neglecting to shift her moorings, and keep clear of the Carib, as they might and ought to have done; and that the respondents had sustained damages to the amount of $5000, which sum was then justly due, without any legal set-offs; that the appellants were non-residents, and, as the respondents were informed and believed, intended removing the Edward out of the State; and praying judgment for the damages, and costs; and for a writ of attachment against the Edward, and all other property, &c., of the appellants; and for general relief. Moore made affidavit to the truth of the complaint; and that the appellants were indebted to the respondents in the sum of $4,499 50,

over and above all legal set-offs, and that the demand arose upon a contract express and implied. The respondents having filed an undertaking as required by statute, a writ of attachment was issued, and levied on the Edward, her apparel, &c. The respondents subsequently amended their complaint, averring a survey of the damages by the Port Wardens, who estimated them at $4,499 50, and a promise and refusal by the appellants to pay the damages so assessed.

A motion to set aside the attachment was overruled. The appellants answered, first, denying the complaint generally. Second, that at the time of the collision, the Edward was properly moored in the berth to which she had been taken by the proper pilot; and that the collision was not caused by the fault of the Edward, but by the fault of the Carib, which was deserted by the master and seamen, and left in charge of the cook. Third, that after the collision, Moore, as master of the Carib, and Boyd, as master of the Edward, mutually executed arbitration bonds, submitting the matters in the complaint to the award of certain persons named, who, on the 6th of December, 1850, made and delivered their final award in writing, under their hands and seals, (but the award is not set out,) and averring a readiness, &c., to perform on the part of the appellants, and a refusal, &c., on the part of Moore.

The cause was tried by the Court, the parties waiving a jury.

The following testimony was adduced for plaintiffs.

J. M. Sutton. Was Inspector of the Customs, and on board the Edward at the time of the collision. She was moored so near the Carib, that the vessels would come in contact when the tide shifted. The Carib was first moored in her position. The first collision occurred on Sunday, Nov. 24th; we pushed the vessel off ourselves, and no damage was done. The second collision took place on that, or the next night, about dark. The captain of the Edward, two mates, myself, the steward, and two or three sick men, were on board. The vessels swung together, the Carib's bow riding on the Edward's waist. The Carib was light, and the Edward heavy,—laden with coal. The captain was in the cabin with me when the accident occurred. He called the mates, and tried to clear the ship by every means. In conversing with me about the collision, the mate said he had told

the captain to bring some men off to moor the ship, that she was in a bad position, and in danger of running foul of the Carib. The captain was not then present; but I have heard the mate tell him on frequent occasions, that they ought to have had more men on board. The captain said the fault was the pilot's; and he and the mate said the pilots ought to pay the damages. Neither of them blamed the Carib, except once the captain said the Carib ought to have had more men on board. We cut away about thirty fathoms of the Edward's cable, which we lost; and then drifted down the harbour. The Edward was moored nearer the shore than the Carib. The captain had taken most of the crew of the Edward, (who were all sick,) to the hospital, before the collision.

Vernon Lindenberger. Was Inspector of Customs in Nov. 1850, and knew where the Carib was moored. The captain of the Carib had the port regulations; and took great pains in mooring her. She was from five to seven years old, and in good order, and well provided with anchors, &c.

Samuel Gardner, a shipwright. Made a survey of the Carib in Nov. 1850, with Captain Hunter and Mr. Moore, the port-warden. Estimated the damages caused to the Carib by the collision, at $4,499 50, and the port-wardens reported accordingly.

E. J. Moore. Was port-warden, and surveyed and reported the damage to the Carib, as stated by the last witness. The estimate is a liberal one. Knew Moore, the master of the Carib. Also knew the plaintiff, Griswold, but neither of the other plaintiffs. I took it for granted Griswold was the owner. He admitted a claim I had on the vessel; and Captain Moore said Griswold was one of the principal owners.

William Ireland. Know the barque Carib, and the plaintiff Griswold. Don't know any direct act of ownership by him over the barque. The plaintiff Cave is an owner; and employed me to make repairs. Know of Griswold buying a bowsprit for the Carib, which was not used. Cave paid me for the repairs I made—about $800—and told me he and Griswold were interested in the vessel.

The plaintiffs then offered a certified copy of the register of the Carib, to prove their ownership; to which the defendants

objected, on the ground that the register itself would be no evidence of ownership; and the Court sustained the objection.

The appellants then moved for a nonsuit, which was overruled.

The appellants then called the witness Ireland, and examined him as to the value of the repairs of the Carib.

Captain Fraser, sworn for the defendants. In the revenue service. One of the arbitrators to estimate the damage done the Carib. Bonds were given to abide the award. We awarded $1700; and I think the allowance a fair one. The only objection made to the award by Captain Moore, was, that it was not to be paid in cash, but to be expended in repairs. Some one on board told us that the Carib had no chain to pay out, at the time of the collision. If the jib-boom and flying jib-boom had been rigged in, they would not have been hurt by the collision.

George W. Sands, a shipwright. Estimated the damage for the arbitrators at $1700, which is a large estimate. I expected to get the job. The repairs could have been made for $1200.

McDonald, a pilot. Rogers was the pilot who brought in the Edward. The duty of a pilot in charge of a ship, is to command her, and anchor her, by a single anchor, where he pleases. She remains there till the harbour master changes her position. I saw where the Edward was anchored by the pilot. The rule in all cases, when a vessel is moored, is to put down two anchors, cockbill the yards, and rig in the booms. It is usual for the master, within 24 hours after arrival, to consult the harbour master, and take his orders as to position. It is not improper for a vessel to have an anchor hanging a cockbill, though in case of collision, it might do damage. (The port regulations were then produced, and corresponded with the testimony of the witness.)

Wm. Jones. One of the crew on board the Edward at the time of the collision. Was on deck, and saw the whole occurrence. The pilot anchored us so near the Carib that the vessels could not swing clear. We swung with the tide, and came foul of the Carib. Her jib-boom was out, and came in contact with our mizzen-mast. Had her jib-boom been in, she would have struck us more aft, and passed without fouling before the mizzen-mast. The vessels were in contact five or six hours before we

could get clear, and most of the damage was caused by their grinding one against the other. We shouted to the Carib to give chain and drop astern; but they had no hands and no chain. Had there been a crew on board the Carib, the damage would not have been so great.

J. Naglee. One of the arbitrators, who awarded $1700 for the damages. The Carib had not sufficient chain. She should have had at least 90 fathoms. It appears she had only 65, which was all out; so that she could not pay out to avoid collision. The witness being asked, whether the captain of the Edward, on examination before the arbitrators, admitted that his ship was placed too near the Carib. The defendants objected that it was not admissible to show what the parties said before the arbitrators, and the court sustained the objection.

Boyd, the captain of the Edward, was then called by the plaintiffs, and testified that his co-defendant was owner of the Edward. Being then examined for the defence, he testified that there was no carelessness on board the Edward; that finding the collision pending, and no crew on board the Carib, he and some of his men went on board to veer out her chain, but could find none. Had there been hands on board the Carib, and 15 or 20 fathoms of chain to veer out, no damage would have been done. I arrived in port on Saturday; went to the harbour master on Monday, when he assigned me a berth at Rincon Point; and I engaged men to assist in moving. The collision took place that evening. We set several sails to avoid the collision by trying to stem the tide. The Carib's yards were square, and her jib and flying jib boom rigged out.

The Court found for the plaintiffs, and assessed the damages at $1500; and judgment was rendered accordingly.

*Burritt* and *Musson* for the appellants, made the following points. 1st. In cases of collision, the plaintiff cannot recover unless he proves that it was caused by the fault of the defendant, without any fault in the plaintiff. 1 Conk. Adm. 300; Abb. on Ship. 238; Story on Bailm. sec. 605; 1 Moody & Mal. 169; 4 Carr. & P. 106; 5 Ib. 421; 2 Hagg. 360; 19 Wend. 399; 8 Law Rep. 275; 6 Whart. 311. 2d. The omission to comply with the port regulations raises a presumption of carelessness, and throws on the plaintiff the burthen of proving that the col-

lision was not caused by such omission.   6 Law Rep. 117.   3d. Where a proper pilot is on board, and has charge of the vessel, the owner is not answerable for a collision.   1 Robin. 56; 2 Hagg. 183; Abb. on Ship. 205.   4th. The owner and master were improperly joined as defendants.   5th. The Court erred in overruling the motion to dissolve the attachment.

*A. Wells,* for the respondents.   1st. There was evidence at least tending to show negligence on the part of the defendant's vessel; and the decision of the Court, sitting as a jury, cannot be disturbed.   2d. The jib-boom of the Carib being out, did not produce the collision; and it is no answer to the action that the damages would have been less, had the boom been in.   38 Eng. C. L. 263, and note.   The question is, could the plaintiff, by ordinary care, have prevented the collision; Sill *v.* Brown, ib. 245; Lock *v.* Seward, 19 ib. 299; Smith *v.* Dobson, 3 M. & Grang, 58; Duggart *v.* Bradley, 8 Wendell.   3d. Having a pilot on board does not exonerate the owner.   Abb. on Ship. 230, notes.

Justice HEYDENFELT delivered the opinion of the Court.   This case was tried by the judge below without a jury.   The main point on which the appellants rely for reversing the judgment, is based upon the ground that the judgment of the Court is not warranted by the evidence.   It has been heretofore decided, that where there was any conflict in the evidence, the appellate Court would not review the facts of a case.   Hoppe *v.* Robb. We not only affirm that decision, but will also decline to review the facts of a case unless the assignment of errors shews that the Court below refused an application for a new trial, made on the ground that the verdict was contrary to the evidence;—and that only because the statute gives an appeal from the refusal of a new trial.   In all cases where the judge below tries the facts of a case, the proper mode of reserving the questions of law arising upon the facts, is to ask the Court to decide the law as counsel may desire; and upon a refusal, to have it noted in the bill of exceptions.

In this case, even if the facts as shewn by the record were properly before us for revision, we could not disturb the judgment.   We affirm the principle insisted on by the appellant,

that in a case of collision, the plaintiff must be faultless. We also concede that the regulations instituted by the harbour master under the authority of the statute, are of binding efficacy, and form part of the law of the state. But, nevertheless, we think it sufficiently appears from the evidence, that the neglect of the plaintiffs to observe the rule which required his jib and flying jib booms to be rigged in, was not the cause of the collision. It may have increased the injury; and we must presume that it was so considered by the Court below in assessing the damages, especially as the record does not shew the contrary.

When a vessel is properly in charge of a licensed pilot, the owner is not liable for damages which may ensue from the negligence or misconduct of the pilot. Under our statute, however, the responsibility of taking a position, or berth, for a vessel in port, rests upon the master of the vessel, or upon the harbour master; and therefore the owner is not exempt from liability for injuries committed by taking an improper berth, although such berth may have been selected by the pilot who brought the vessel into port.

There remains but one other point to consider. It seems that, pending the proceedings in this cause, an attachment was sued out by the plaintiffs below, which was levied on the property of the defendants. A motion was made to dissolve the attachment, which was refused by the Court below; and this refusal is assigned as error. The process of attachment is the creature of statute. It is a remedy only given in cases of indebtedness arising upon contract; and in this case, the resort to it was a gross abuse of that process, and this court must extend to it the remedy which the District Court refused.

The order refusing to dissolve the attachment is reversed, and judgment is here rendered dissolving the attachment. The final judgment of the Court below is affirmed.