TAAFFE *et al. v.* ROSENTHAL *et al.*

An appeal will lie to this Court, after final judgment, from an order refusing to discharge an attachment.

An order refusing to discharge an attachment cannot be appealed from before final judgment.

It is no objection to an undertaking on attachment, that it is made payable to the People of the State of California, instead of the defendant in the suit, as the latter can sue thereon in his own name.

APPEAL from the District Court of the Fourteenth Judicial District, County of Nevada.

Taaffe, McCahill & Co. commenced this action in the Court below on the eighteenth of November, 1856, to recover of the defendants two thousand three hundred dollars, and at the same time filed affidavit and undertaking, and caused an attachment

and summons to issue.   Under the former, the goods of defendants were attached.   The undertaking was as follows :

STATE OF CALIFORNIA, COUNTY OF NEVADA :
   *Taaffe, McCahill & Co., Plaintiffs*, v. *Simon Rosenthal & Bro., Defendants.*—Know all men by these presents that we, J. C. Abbott and Thomas Brady, are held and firmly bound unto the State of California, in the sum of one thousand two hundred dollars, the payment of which well and truly to be made, we bind ourselves, heirs, executors, etc., jointly and severally, by these presents.   The condition of the above obligation is such, that whereas Taaffe, McCahill & Co. have, this day, instituted suit against Simon Rosenthal & Bro., in the District Court, Fourteenth Judicial District, for the sum of twenty-three hundred dollars, and ask an attachment against the property of said defendants :
   Now, if the said defendants recover judgment against the said plaintiffs, and the said plaintiffs shall pay all the costs that may be awarded to said defendants, and all damages which they may sustain by reason of the attachment, not exceeding one thousand two hundred dollars, then the above obligation to be null and void, otherwise to remain in full force and virtue.
   Given under our hands and seals this, the eighteenth day of November, 1856.

                                   J. C. ABBOTT.        [SEAL]
                                   THOMAS BRADY.      [SEAL]

STATE OF CALIFORNIA, COUNTY OF NEVADA, ss :
   J. C. Abbott and Thomas Brady, each being duly sworn, deposes and says that they are worth the sum of twelve hundred dollars over and above his just debts and liabilities, exclusive of property exempt from execution.

                                   J. C. ABBOTT.
                                   THOMAS BRADY.

   Subscribed and sworn to before me, this eighteenth day of November, 1856.                    J. H. BOSTWICK, Clerk.

   On the first of December, 1856, defendants filed notice of motion to dissolve attachment, stating their grounds to be that the undertaking was void, for the reason that it was made payable to the People of the State of California, and that the justification of the sureties thereto was insufficient.   On the fifteenth of December, 1856, the Court below denied the motion, to which order the defendant at the time excepted.   On the sixth of January, 1857, the case was tried, and judgment rendered in favor of plaintiffs for the sum of one thousand seven hundred and fifty-three dollars.

This appeal was taken by defendants from the final judgment in the case, and the order of the Court refusing to dissolve the attachment.

*Buckner & Hill* for Appellants.

The bond for attachment is not such as required by the statute, in such case made and provided, the same being given to the State of California, instead of to the defendants. See Practice Act, § 122.

The justification to the bond is not such as required by the statute, in this, that the statute requires that each security shall swear that he is individually worth the sum specified in the bond, over and above, etc., etc.; whereas, the justification is, that they are worth, etc.

Where a bond is required, it must follow the requirements of the statute, and a departure from the statute is fatal. See Drake on Attachments, § 121; 2 Hill N. Y., p. 616; also Drake on Attachment, § 122, and 2 Howard, 669.

The sufficiency of the bond to sustain the attachment, may be inquired into, as to terms, parties, or amount. See Drake on Attachment, § 129; Bank of Alabama *v.* Fitzpatrick, 4th Hume, 311; and 12 Smedes & Marshall, 514.

The bond must be construed strictly, being in derogation of the common law, and the attachment issued under a bond is void, where there is not strict compliance with the law, both in bond and attachment. See Griswold *v.* Sharp, 2 Cal., 17; also, Drake on Attachments, § 122; and 4 Smedes & Marshall, p. 683, and p. 514.

*J. R. McConnell* for Respondents.

The object of the attachment was merely to obtain a hold or lien on the property of defendants, so as to subject it to any future judgment and execution which might be obtained by plaintiffs.

That object has been obtained by the rendition of judgment for plaintiffs, and no action of this Court, except a reversal of the final judgment, could possibly undo what has been done, or change the right of the plaintiffs to apply the property attached to the discharge of their claim; for, if they had not the right under their attachment, they now have it under their judgment and execution.

Suppose the money arising from the sale of the property attached had been paid over to plaintiffs, would this Court order it to be paid back? If it would, then this case would present a most strange anomaly; for by the final judgment which you affirm, you hold that the money ought to be paid to plaintiff; while by reversing the attachment-order, you require it to be paid back.

For what purpose then, *cui bono*, would this Court set aside and reverse a mere collateral and auxiliary order, when such reversal could be of no possible benefit to the appellants themselves.

The case of Griswold and others *v.* Sharp and others (2 Cal. Rep., 17,) is not in point. There an attachment had issued in a suit for liquidating damages for injuries resulting from a collision between two ships. Of course, it was not, under our law, a proper case for attachment, and the defendant had a right, notwithstanding the final judgment against him, to sue on the attachment-bond, and recover such damages as had resulted from the improvident issuing of the writ.

In passing upon the legal sufficiency of an attachment-bond, it seems to us that the only point for inquiry is, can it be enforced? If it can, it is sufficient. If it is so written, that the party for whose benefit it is made can maintain an action thereon, then it is a substantial compliance with the law.

The doctrine that attachments, being in derogation of the common law, must be construed strictly, has no application to a question of this sort.

I believe that it is generally admitted, that none of our *statutory undertakings* are technically " sealed instruments."

This doctrine is as old in England as the reign of Charles the Second. See Dutton *v.* Poole, 1 Ventris Rep., 318.

In the American Courts it has received the strongest confirmation. In Schemerhorn *v.* Vanderheyden, 1 John. R., 139, it is said, that " when one person makes a promise to another for the benefit of a third person, that third person may maintain an action on such promise." 3 Bos. & Pul., 149.

The same doctrine is again asserted in Sailly *v.* Cleveland & Hutton, 10 Wend., 156. See also U. S. *v.* Kennan, Peters' C. C. Rep., 169 ; 17 Serg. & Rawle, 241 ; Harper *v.* Ragan, 2 Blakf., 39 ; 16 Mass. Rep., 400 ; 8 Conn. Rep., 60 ; 4 Wend. Rep., 419.

That the sureties could not take advantage of an informality or defect in the bond to defeat its collection, is too well settled to need argument. An instrument may be a perfect nullity as a statutory bond, and yet good as a common law bond. See Drake on Attachments, §§ 147 to 149 ; Hibbs *v.* Blair, 14 Pen. R., 413 ; State *v.* Berry, 12 Missouri, 376 ; Bamer *v.* Webster, 16 ib., 258.

As to the point in reference to the justification of the bondsmen, it is too trivial for serious argument. We do not know, nor do we care, whether the justification in form complies with the statute or not.

If it does not, then it was in the power of the defendants, by motion, at any time, to compel a proper justification. And if the sureties could not justify, then to require other sureties, in the same manner as if one or more of them had died or become bankrupt.

BURNETT, J., delivered the opinion of the Court—MURRAY, C. J., concurring.

This action was commenced by attachment and summons, and defendants moved to discharge the attachment, which motion was overruled and exceptions taken. Final judgment having been given against defendants, they appealed from the judgment and the order refusing to discharge the attachment.

1. The counsel of plaintiffs objects, that final judgment having been taken against defendants, and that judgment being regular, no objection can be urged on appeal against the order of the District Court, refusing to discharge the attachment. This objection would not seem to be well founded. It would, practically, destroy the appellate power of this Court conferred by the Constitution. If true, the defendant, however great may have been the injury sustained by him in consequence of the wrongful issuing of the attachment, could have no remedy when the order of the Court below should be against him. This point has been decided by this Court in the case of Griswold and others *v.* Sharp and others, 2 Cal. Rep., 17.

2. The first objection made by the defendants against the undertaking is, that it is given to the State of California, and not to defendants. The conditions of the undertaking comply with the terms of the statute. The one hundred and twenty-second section of the Practice Act does not require the undertaking to be executed in *form* to the defendants, but specifies the *conditions* it shall contain. The defect assigned would not seem to be at all material. The defendants being the parties really in interest could no doubt sue upon the undertaking in their own names.

3. The only remaining objection to the undertaking is that the justification of the sureties is insufficient. The six hundred and fiftieth section of the Practice Act requires the sureties to swear that they are each worth the sum specified in the undertaking. The affidavit made by the sureties in this case, when fairly construed, complies with the statute. The word "each," is not placed in the same position that it occupies in the statute; but, taking the whole affidavit together, the meaning is the same.

We can see no error in the decision of the Court below.

Judgment affirmed.