COMMISSIONERS OF JEFFERSON COUNTY, respondents, *v.* LINEBERGER ET AL., appellants.

SUMMONS. In an action on his official bond against a defaulting treasurer and his sureties to recover the penalty therein for breach of the conditions thereof, it is a sufficient compliance with the statute to state in the summons that the action is brought to recover the penalty named in the bond, with interest and costs of suit.

COUNTY TREASURER'S BOND. An official bond voluntarily entered into by a county treasurer, with sureties for the faithful performance of his duties, and to save the county harmless in his discharge of the same, though erroneously given to the Territory instead of the county commissioners as required by law, is good and binding as a common-law bond.

PARTIES TO AN ACTION — *in name of party in interest.* In action upon such a bond, the county being the real and only party in interest, and being created by law a body politic and corporate, through its board of commissioners, its legally constituted agents, is the proper party to institute action.

DEFENSES.    It is no defense to an action upon said bond brought to recover the penalty thereof for breach of conditions, to allege in answer that the office and safe furnished by the county were broken open and robbed without any want of reasonable care on the part of the treasurer, and to strike such a defense from the answer would not be error.    Neither is it a proper defense to such an action to allege that the commissioners compromised and settled the claim of the county, accepting part of the moneys due, and in consideration thereof releasing the treasurer and his sureties from liability for the balance. Such defense should be stricken from the answer, and all evidence of such a compromise or settlement was properly excluded from the consideration of the jury.    It is not in the power of the county commissioners to compromise such a claim.    Their only duty is to prosecute the delinquent official and his sureties.    There could be no legal consideration for such an agreement, and neither parol or record evidence thereof would be received.

INTEREST — *vexatious and unreasonable delay.* The case of a county official refusing to pay over the moneys of the county upon proper demand, and compelling the institution of suit to recover the same, is such an unreasonable and vexatious delay contemplated by the statute, as to entitle the county to recover interest on the same.

### *Appeal from First District, Jefferson County.*

THE cause was tried before BLAKE, J.

E. W. TOOLE for appellants.

The summons in the case was radically defective in not stating the *cause* and general nature of the action.

Defendants' demurrer to the complaint should have been sustained for the following reasons:   First, the bond was given to the Territory instead of the county commissioners.   Second, it does not purport to be for the use and benefit of the county. Third, the complaint sets forth no facts to show how the Territory became trustee for plaintiff.   Fourth, there is no statute enabling the Territory to become such trustee.   Fifth, the bond lacks in the essential element of having a party able to contract. Sixth, nothing shows that suit was brought by order of the commissioners.   Cod. Sts. 569, § 2.

On the theory of the complaint the treasurer is made the in-

surer of the county funds.   For contrary authorities see 19 Johns. 381 ; 7 Cranch, 242 ; 2 Kent's Com. 610; Story on Bail. 302–390.

The controversy involved merit and there was good consideration for a compromise which courts should uphold. *Steele* v. *White*, 2 Paige, 478 ; 21 Cal. 122.

The commissioners are authorized to compromise claims. Cod. Sts. 569, § 2, and 435, § 14. After having made it they are estopped from denying it. *Lee* v. *Mills*, 6 Monr. 91 ; 1 Pars. on Cont. (5th ed.) 438.

Till the settlement is set aside by some mode known to the law, it must stand as conclusive between the parties. 18 Ohio, 6 ; 9 Wend. 508 ; 2 Denio, 26 ; 2 Hill, 14 ; 23 Barb. 328.

If commissioners exceeded their authority the remedy is *certiorari*. 18 Cal. 144.

The case is not such as to justify a claim for interest.

James G. Spratt, district attorney, for respondent.

The summons conformed to the statute.

The bond, though given to the Territory by mistake, shows in its several conditions that it was for the use of the county. The provisions of law relating to the duties of county officers show that the county alone is interested and the only proper party to the action. *Sharp* v. *Contra Costa County*, 34 Cal. 285 ; *People* v. *Ingersoll*, 58 N. Y. 1.

The bond was voluntarily given by defendants for the sole use and benefit of the county and they are estopped from denying its validity. *Baker* v. *Bartol*, 7 Cal. 551 ; *Curiac* v. *Packard*, 29 id. 200 ; *Lomas* v. *Brown*, 16 Barb. 325.

Our statute requires action in the name of real party interested.

The conditions in the bond fix and determine the responsibility of the treasurer, and by no other standard is he to be judged or held. It is unconditional responsibility to pay over on proper demand. *United States* v. *Prescott*, 3 How. (U. S.) 578 ; 9 Wall. 56, 161 ; 3 Penn. 572 ; 6 Ohio, 607 ; *United States* v. *Thomas*, 15 Wall. 333.

It was purely a question of contract and not one of bailment. Evidence of a pretended parol settlement was properly excluded.

The commissioners had no authority to make such a settlement or release defendants from the conditions of their contract. The board of commissioners is a court of record, and nothing but a record of such a transaction would be admissible in any court. There could be no consideration to support such a pretended verbal compromise.

Interest is given by statute for unreasonable and vexatious delay.

WADE, C. J.    Before proceeding to discuss the questions raised by this appeal, I deem it my duty to say that the record in this case is unworthy a place among the files of this court, and if its defects had been discovered before the adjournment of the last term, at which time the case was submitted, the same would not have been received. The transcript seems to have been made with the sole desire of extorting large fees for the labor of writing the same. It is a double transcript, and of course double fees were received for making it. It contains 128 pages, when, if properly made and condensed, 40 pages were sufficient to contain all that was necessary, to properly raise every question in the case. The record commences with the complaint, then follows a demurrer, then the order overruling the same, the answer, a motion to strike out portions of the answer, the order sustaining the motion, the replication, the verdict, and the judgment thereon. Then follows at full length a repetition of the complaint, the demurrer thereto, the order overruling the same, the answer, the motion to strike out portions of the answer, the order sustaining the motion, the replication, the verdict and the judgment thereon. If there is any possible reason for this repetition whereby the size of the record is doubled, and the labor of finding any thing therein, except that not wanted, is quadrupled, we have failed to discover such reason, except it exist in the fact that for a record containing 40 pages, only one-third the charge could be made, as for a record of 120 pages. In all such cases, the superfluous matter should be stricken from

the record on motion and at the costs of the party whose business it is to bring a proper transcript into court.

1. This is an action commenced and prosecuted in the name of the county commissioners, upon the official bond of the treasurer of Jefferson county, to recover the penalty for alleged breaches in the conditions thereof. There was a special appearance by Hildebrand and a motion to quash the summons, which was overruled, and upon this action of the court is based the first assignment of error. This alleged error is not embraced in the assignment of errors on motion for a new trial, but this appeal is from the judgment as well as from the order overruling the motion for a new trial, therefore all exceptions properly taken and saved and contained in the judgment-roll can be brought before the court for review. The appellants in their brief rely upon one objection only to the summons, viz.: that it does not state the *cause* and *general nature* of the action as required by section 30 of the Practice Act. This is an action upon a bond to recover the penalty, for alleged breaches in the conditions thereof.

The summons, after designating the court in which the action is brought, the names of the parties, and the time when the defendants are required to answer, describes the cause of action as follows: " The said action is brought to recover judgment for the penalty of a certain bond, executed and signed by the foregoing defendants in the sum of $15,000 with interest and costs.'' The object of the action, as disclosed in the complaint, is to recover a judgment for the sum of $15,000, the penalty of the bond, and the notice contained in the summons sufficiently describes the cause and general nature of the action. Other points are presented in the motion to quash the summons, but as they were not set forth in the brief of the appellants, they are deemed waived. *Cope* v. *Upper Mo. Min. and Prosp. Co*, 1 Mon. 53.

2. The next assignment of error raises the question as to the validity of the bond, and in whose name the action should have been commenced. The statute (Cod. Sts. 451, § 87) requires that each county treasurer, before entering upon the duties of his office, shall execute to the board of county commissioners

a bond, with three or more sureties, conditioned for the faithful performance of the duties thereof. The bond of this treasurer, upon which this action was brought, was in fact given to the Territory, and not to the board of county commissioners, as required by the statute. And so the appellants say that the bond does not, by its terms, purport to be for the use and benefit of the county, so as to authorize it to sue upon any breach of its conditions; that the complaint contains no allegation by which the Territory, the obligee in the bond, became the trustee for the county in whose name the action is prosecuted; that the Territory has no capacity, outside of statutory enactment, to become such trustee, and that no such enactment exists; that the bond is therefore wanting in one of the essential elements to its validity, viz.: parties qualified to contract; that the Territory was not so qualified, and the bond is therefore void.

Under this claim of the appellants, obviously the first question to be settled is, whether or not the bond, being given to the Territory, as obligee, instead of the county commissioners of Jefferson county, as required by the statute, is thereby rendered void.

The bond was given for the purpose of securing to Jefferson county its public funds, to be received by its county treasurer. It was a voluntary obligation entered into by competent parties; its purpose was lawful; its consideration sufficient, being that the principal obligor should enter upon and perform the duties and be entitled to the honor and emoluments of the office, and these are the necessary elements of a good and valid bond at common law.

A bond, not good as a statutory bond, being voluntarily given is good as a common-law bond. *Lane* v. *Kassy*, 1 Metc. (Ky.) 410; *Rowlett* v. *Eubank*, 1 Bush, 477; *Gatherwright* v. *Callaway Co.*, 10 Mo. 663, cited in 3 U. S. Digest, first series, 14, § 249.

A bond is not void merely because it may not in all respects conform to the statute under which it was taken. *Van Dusen* v. *Haywood*, 17 Wend. 70. A variance between a statutory bond and the requisitions of the law is fatal to it only when the con-

dition would impose a greater burden than the law allows. *Commonwealth* v. *Lamb*, 1 Watts & S. 263. Where a bond is executed without being authorized by statute, the makers cannot defend against it on that ground; it is good as a common-law bond. Drake on Attachment, § 151. A bond is not necessarily invalid, though not authorized by statute. It will be good as a common-law bond where it does not contravene public policy nor violate a statute, and be binding upon the parties to it. *Sheppard & Morgan* v. *Collins*, 12 Iowa, 573. A voluntary bond entered into by competent parties and for a lawful purpose, not prohibited by law and founded upon a sufficient consideration, is good and valid at common law. *Archer* v. *Hart*, 5 Fla. 234.

A bond executed by a public officer and his sureties, though not good as a statutory bond, may be binding as a voluntary obligation, and an action at common law may be maintained thereon. *Goodwin* v. *Carroll*, 2 Humph. (Tenn.) 490.

These authorities would seem to render the conclusion safe that the treasurer's bond is not a void obligation, because the Territory was named as obligee therein, instead of the county commissioners.

The bond being valid, in whose name should an action thereon, for a breach thereof, have been instituted?

The Practice Act in force when the suit was commenced provided that every action shall be prosecuted in the name of the real party in interest. Cod. Sts. 28, § 4.

The statute then as now also provided (Cod. Sts. 433, § 1) that each organized county within this Territory shall be a body corporate and politic, and as such shall be empowered to sue and be sued. Section 5 of the same act provides, that in all suits by or against a county, the name in which the county shall sue or be sued shall be the board of commissioners of the county. Who was the real party in interest to enforce the collection of the penalty of this bond? It is admitted in the pleadings that the defendant, David H. Lineberger, was elected treasurer of Jefferson county, and that he and his sureties executed and delivered to the board of commissioners of said county the bond upon which this action is brought, and that the same was duly accepted

by said board. It appears upon the face of the bond that the same was given to secure the county of Jefferson against the defalcations of its treasurer, and that the Territory had no interest in such treasurer, nor in the money demanded in this action. The statute provides that it shall be the duty of each county treasurer to receive all moneys belonging to his county, from whatever source they may be derived, and all other moneys that are by law directed to be paid to him. Cod. Sts. 452, § 92. The money which the plaintiff is seeking to recover in this action, if recovered, belongs to Jefferson county, and the Territory has no interest therein.

The county then is the real party in interest, and the county commissioners are the proper parties plaintiff. This principle was recognized in the case of *Lomme* v. *Sweeney & Holter*, 1 Mon. 584, which was an action upon an undertaking in replevin, executed by the defendants to Roberts, sheriff, and upon which, Lomme, the attaching creditor, instituted an action and recovered a judgment. The same principle has been declared in California.

In *Taaffe* v. *Rosenthall*, 7 Cal. 514, the court say : " The first objection made by the defendants against the undertaking is, that it is given to the State of California, and not to the defendants. The conditions of the undertaking comply with the terms of the statute. * * * The defect assigned would not seem to be at all material. The defendants, being the parties really in interest, could, no doubt, sue upon the undertaking in their own names." And in *Thornburgh* v. *Hand*, 7 Cal. 554, the court say : " Formerly where a bond was given to an officer, State or corporation, suit had to be brought in the name of the party holding the legal title, for the benefit of the persons interested, but our statute has introduced a new rule, and by the provisions of the Practice Act, the suit must be prosecuted in the name of the real party in interest. The declaration and bond show beyond all doubt that Baker, the present plaintiff, is the true party in interest, and there was no error in declaring in his own name."

Decisions to the same effect have been made in *Curiac* v. *Packard*, 29 Cal. 194; *Sacramento Co.* v. *Bird*, 31 id. 72; *The*

*People* v. *Ingersoll*, 58 N. Y. 1; *Mendocino Co.* v. *Morris*, 32 Cal. 145; *Solano Co.* v. *Neville*, 21 id. 468; *Sharp* v. *Contra Costa Co.*, 34 id. 285.

Other principles sustain the same position : "The fact that the trustee of an express trust might bring an action in his own name does not, in most instances, preclude the beneficiary or real party in interest from likewise bringing suit in his own name, and the instance of a party for whose benefit a contract was made is a case in which this may be done." *The Camden Bank* v. *Rogers*, 4 How. 63 ; 1 Whit. Pr. 64; *Lane* v. *The Columbus Ins. Co.*, 2 C. R. 65. A promise made by one person to another for the benefit of a third person creates a cause of action in favor of such third person. This principle is laid down in Comyn's Digest, without question of its authority. Many decisions to the same effect are cited in 3d U. S. Digest, first series, p. 524, § 2444. The same principle extends to contracts under seal: "If A. covenant generally to indemnify B., B. may have covenant though he did not seal the articles, and the covenant was not with him." It must undoubtedly appear that the covenant which is alleged to have been broken was made for the benefit of the person bringing the action. *Fellows* v. *Gilman*, 4 Wend. 419, and authorities cited.

In the case at bar the obligors of the bond, for a valid consideration, viz., that Lineberger should enter upon the duties and receive the emoluments of the office of county treasurer of Jefferson county, promised and covenanted with the Territory, but for the sole and exclusive benefit of the county, that if the condition of the bond was broken by the treasurer, they would save the county harmless. And the purpose of this obligation and contract, the consideration therefor, and for whose benefit it was made, all appear on the face of the bond. Hence the county, by its authorized representatives, can maintain an action on the bond.

3. It is alleged in the answer as a defense to the action that the plaintiffs, the county commissioners, provided the treasurer with an office and safe wherein to keep the funds coming into his hands, and that without any want of reasonable care on the part

of the treasurer, his office was broken open, the safe therein robbed, and the money in question stolen. This defense was stricken out on motion, and this action of the court is assigned as error. Was the matter stricken from the answer a defense to the action ? This question is so completely answered by the supreme court of the United States in the case of *The United States* v. *Eli S. Prescott et al.*, 3 How. 578, that we quote at length from the opinion therein. The action was brought on a bond given by Prescott, with the other defendants as his sureties for the faithful performance of the duties of receiver of public moneys at Chicago, in the State of Illinois. The defense was that Prescott failed to pay over the money for which the action was brought, because the same had been feloniously stolen, taken and carried away from his possession without any fault or negligence on his part, and that he used ordinary care and diligence in keeping the money. The court, by McLEAN, J., says: "This is not a case of bailment, and consequently the law of bailment does not apply to it. The liability of the defendant Prescott arises out of his official bond, and principles which are founded upon public policy." After stating the conditions of the bond of Prescott which in effect are the same as those contained in the bond of Lineberger, viz., to pay as the law directs all moneys received by him as receiver of public moneys, the court continues : "The condition of the bond has been broken, as the defendant Prescott failed to pay over the money received by him when required to do so, and the question is, whether he shall be exonerated from the condition of his bond on the ground that the money had been stolen from him ? " "The objection to this defense is, that it is not within the condition of the bond ; and this would seem conclusive. The contract was entered into on his part, and there is no allegation of failure on the part of the government; how then can Prescott be discharged from his bond? He knew the extent of his obligation when he entered into it, and he has realized the fruits of this obligation by the enjoyment of the office. Shall he be discharged from liability contrary to his own express undertaking? The obligation to keep safely the public moneys is absolute, without any condition, express or implied ;

and nothing but the payment of it, when required, can discharge the bond." * * *

" Public policy requires that every depository of the public money should be held to strict accountability. Not only that he should exercise the highest degree of vigilance, but that he should keep safely the moneys which come to his hands. Any relaxation of this condition would open a door to frauds which, might be practiced with impunity. A depository would have nothing more to do than to lay his plans and arrange his proofs so as to establish his loss, without laches on his part. Let such a principle be applied to our postmasters, collectors of customs, receivers of public money, and others who receive more or less of the public funds, and what losses might not be anticipated by the public! No such principle has been recognized or admitted as a legal defense. And it is believed that the instances are few, if indeed any can be found, where any relief has been given in such cases by the interposition of congress."

" As every depository receives the office with a full knowledge of its responsibilities, he cannot in case of loss complain of hardship. He must stand by his bond and meet the hazards which he voluntarily incurs."

If we should substitute the name of Lineberger, county treasurer, for that of Prescott, receiver of public moneys, the language and the reasoning of the foregoing decision would be equally applicable. The treasurer is not bailee of the county funds. His liability is fixed by the condition of his bond. His promise to pay over the money belonging to the county as the law directs is absolute, and the sureties on his bond guarantee this promise. Payment when required can alone discharge the bond. In the case of *The Commonwealth* v. *Comley,* 3 Penn. 394, GIBSON, C. J., says: " The opinion of the court in the case of *The United States* v. *Prescott, supra,* is founded in sound policy and sound law. The responsibility of a public receiver is determined not by the law of bailment which is called in to supply the place of a special agreement where there is none, but by the condition of the bond. The condition of it in this instance was to ' account for and pay over the moneys to be received ; and we would look in vain for

'a power to relieve from the performance of it.' * * * A loss by a visitation of Providence, which no vigilance could prevent, would present a more meritorious claim to relief, one would be apt to think, than a loss by robbery, which is always preceded by a greater or less degree of negligence. A receiver or his surety would come before a chancellor with an ill grace on that ground, even if there was a power to relieve him. The keepers of the public moneys, or their sponsors, are to be held strictly to the contract, for if they were to be let off on shallow pretenses, delinquencies, which are fearfully frequent already, would be incessant. A chancellor is not bound to control the legal effect of a contract in any case, and his discretion, were he at liberty to use it, would be influenced by considerations of general policy."

To the same effect are the following cases : *Muzzy, supervisor,* v. *Shattuck,* 1 Denio, 233 ; *United States* v. *Dashiel,* 4 Wall. 185 ; *United States* v. *Morgan et al.,* 11 How. 160 ; *United States* v. *Thomas,* 15 Wall. 337 ; *State* v. *Harper,* 6 Ohio St. 607.

The cases of *Dunlop* v. *Monroe,* 7 Cranch, 242, and *Bartlett* v. *Crozier,* 15 Johns. 250, referred to by appellants, wherein the general principle of law is announced that whenever an individual has sustained an injury by the misfeasance or nonfeasance of an officer, who acts or omits to act contrary to his duty, the law affords redress, are not in point, and certainly are not in conflict with the decisions we have cited, which hold that payment alone can discharge the bond. And the fact that the commissioners of the county provided the treasurer with an office and a safe is wholly immaterial. He was not obliged to keep his money in the safe. He was only required to pay it over according to law, and where he kept it before such payment was not material to inquire. With a good office and the best of safes, we say, as did the court in the Prescott case, that a treasurer would have nothing more to do than to lay his plans and arrange his proofs, so as to establish his loss without laches on his part, if such a defense were permitted.

4. The answer alleges as a further defense that the board of commissioners did compromise and settle with the treasurer re-

ceiving a part of the money for which he was in default, in full discharge and settlement of the whole amount due from him, whereby the treasurer and the sureties upon his bond were wholly released from the obligations thereof. There was a motion to strike these allegations from the answer, which was denied, and upon the trial the defendants sought to prove the alleged settlement and compromise by parol proof, which was denied by the court.

Had the commissioners authority to receive from the treasurer a portion of the public moneys due from him, and in his possession and so reported by him, and in consideration thereof to cancel his remaining indebtedness to the county, and to discharge him and his sureties from the obligation of his official bond? In more direct language, have the commissioners authority to release a defaulting treasurer, and to discharge his sureties from their promise and covenant to answer for his default?

Every county is a corporation. The commissioners are its agents, they act with defined powers. They have no authority beyond what the statute confers. The statute (§ 14, p. 435, Cod. Sts.) defines certain powers of the commissioners and provides that they shall have the power to perform such other duties as are or may be prescribed by law. Among the other duties prescribed by law are the following (§ 2, p. 569, Cod. Sts.): "It shall be the duty of the county commissioners (in addition to the duties herein prescribed by law) to audit, adjust and settle all accounts to which the county shall be a party; to order the payment, out of the county treasury, of any sum of money found to be due from the county; to enforce the collection of all moneys due the county; to order suit to be brought on the bond of any delinquent, and to require the district and county attorney to commence and prosecute the same " * * *.

Upon this section the appellants base their opinion that the commissioners have the right to settle and compromise with a defaulting treasurer, and to discharge him and his sureties from his official bond without receiving the amount due from him to the county.

True, the commissioners are required to audit, adjust and settle all accounts to which the county shall be a party, but is a

claim or demand against a defaulting treasurer and his sureties arising upon his official bond to be treated as an account of the county against those persons? We think not. An account is a detailed statement of the mutual demands in the nature of debt and credit between parties, arising out of contracts or some fiduciary relation. 1 Bouv. Law Dic., title Account. If this is an account, it would read as follows:

"DAVID H. LINEBERGER, treasurer, in account with JEFFERSON COUNTY, Dr.

To $7,431.64, stolen from you on the night of December 31, 1875. Cr.

By $3,955.49, returned by you.
Balance due, $3,476.15"

We do not think such a demand as this which is a cause of action in favor of the county, arising upon the official bond of the treasurer for breaches thereof, can be called an account within the meaning of the statute. This view is strengthened and supported by the subsequent sentences in the section of the statute cited, which provide, not that it shall be the duty of the commissioners to settle and compromise with a defaulting treasurer, without receiving all that is due from him to the county; not that it shall be their duty to discharge the bond of the treasurer while he is a defaulter to the county, but that it shall be their duty, " *to enforce the collection of all moneys due the county,*" and " *to order suit to be brought upon the bond of any delinquent, and to require the district and county attorney to prosecute the same.*" If a treasurer or any other officer is a defaulter to the county, instead of discharging him from his bond without exacting payment of the full amount due, the commissioners have but one duty in the premises, and that is to prosecute such defaulter, and for this purpose they are authorized to command the services of the district attorney.

They cannot compromise with a delinquent, for they are required to prosecute him. If Mr. Lineberger by reason of robbery, or for any other reason failed, upon legal demand, to account for and pay over the county funds as directed by the law, he was

a defaulter, and the imperative duty of the commissioners, upon being informed thereof, was to prosecute such delinquent upon his official bond, and to compromise with a defaulter under such circumstances would, upon the part of the commissioners, be a gross violation of the letter of the statute and of their duty.

But if the language of the statute requiring the commissioners to prosecute a defaulting officer did not mean any thing, and if they had, notwithstanding the imperative command of this language, authority to settle and compromise with a defaulting treasurer, this agreement so to do, alleged and sought to be proved in the action, was utterly void for want of consideration. The treasury had been robbed. By some means the treasurer had become possessed of a part of the money stolen. It then became his duty at once to have paid the same into the treasury. He held the money as treasurer. It belonged to the county. But instead of paying it over, he proposed to surrender to the commissioners a part of the stolen money recovered, upon condition that they release him and his sureties from his official bond, and this it is alleged the commissioners agreed to do. He did not propose to make good his default or any part thereof out of his private funds, but simply to hand over a part of the stolen money in his possession upon condition that he and his sureties be released from paying the balance of his default. There could have been no consideration for such an agreement. The treasurer should at once have surrendered all the money in his hands belonging to the county, and there was no consideration for the alleged agreement in which the commissioners attempted to hire him to do his duty. Even if the commissioners were clothed with authority to compromise with a defaulter, and to discharge his official bond, the exercise of such a power would be against public policy. It is not the business of congress, legislatures or boards of commissioners to relieve men from the obligation of their voluntary contracts. In this case the parties contracted with full knowledge of all the facts. They knew the obligations they assumed by signing the bond. In consideration of the benefits to be received, they voluntarily took upon themselves all the risks and liabilities to be incurred. And after having received

the benefits they cannot shrink from the responsibilities. For these reasons legislatures refuse to interfere. The court say, in the *United States* v. *Prescott,* that in the case of robbery where the public moneys have been stolen from the officer without any fault or neglect on his part, making as strong a case as can be imagined, the instances are few, if indeed any can be found, where any relief has been given, even in such strong cases, by the interposition of congress. The reason is obvious. Men must stand by their contracts. They cannot receive the benefits and resort to legislatures to be relieved from the liabilities.

But whatever may be the policy of congress or legislatures in relation to relieving defaulters from the conditions of their official bonds, the power thus to do does not reside with the county commissioners, as we have seen from an examination of the statute defining their powers and duties, and any evidence tending to show a compromise and settlement of the character named was properly excluded from the jury.

5. It was admitted in the pleadings that on the night of December 31, 1875, the treasurer was in default. It then became his plain duty and that of his sureties to pay. This they failed and refused to do. They compelled the county to institute an action to recover the amount of their defalcation which they admitted. This makes a clear case of vexatious delay in the payment of a demand justly due whereby interest accrued upon the demand under the statute (Cod. Sts. 497, § 2) which provides that creditors shall be allowed to collect and receive interest at the rate of ten per cent per annum on moneys withheld by an unreasonable and vexatious delay. The judgment is affirmed with costs.

*Judgment affirmed.*

KNOWLES, J, concurring. My opinion touching the legal propositions presented in this case constrain me to present briefly my views for concurring in the judgment ordered to be entered therein.

1. This bond is valid and the county commissioners of Jefferson county could bring this action.

2. Under the decisions of the supreme court of the United States by which we are bound, any officer charged with the safe-keeping and disbursement of public moneys and for which he is required to account is civilly liable for any deficiency in the same, although such deficiency may have occurred by reason of the stealing of such moneys by a stranger, and without the knowledge or connivance of such officer.

3. I hold that any claim against such officer on account of such deficiency may be settled or compromised by any board of county commissioners, to whose county such moneys belonged.

4. The fact that said county commissioners make no record in the minutes of their official proceedings of such settlement or compromise will not render the same invalid.   And the said settlement or compromise need not be evidenced by a record in the official proceedings of such board, but the same may be proved by parol evidence.

5. For every such settlement or compromise there should be a legal consideration.

6: The paying over to the county commissioners or to their successors in office by the said Lineberger of moneys for which he should account, and of which he was intrusted with the care, custody and disbursement, and which belonged to the county, would not be a legal consideration for the settlement or compromise of the claim due the said county on account of such deficiency.   The county in such a case would receive only its own, and the said Lineberger would part with nothing to which he had any legal right further than to safely keep and disburse the same according to law.   He would have no legal right and should have none, to take moneys belonging to the county and with which he was only intrusted by law with the custody and disbursement, and use it to liquidate a claim he individually owed said county ; and the board of county commissioners would have no right to give Lineberger this debt, any more than they would have the right to give him the county buildings of their county.