(No. 11364.—Reversed and remanded.)
THE PEOPLE, for use, etc., Appellees, *vs.* RICHARD J.
McGRATH *et al.* Appellants.

*Opinion filed June 21, 1917—Rehearing denied October 4, 1917.*

1. BONDS—*statutory bond need not be in language of statute
unless expressly so required.* A bond given under authority of
law is not invalid because not executed in the form provided by
the statute unless the statute expressly so requires, and such a
bond, if in substantial compliance with the statute, is not a mere
common law obligation but is a statutory bond, with the statutory
measure of liability for its breach.

2. SAME—*a bond conditioned for faithful performance of all
duties covers the paying over of moneys.* A bond of the clerk of
a court conditioned that he "shall faithfully perform the duties of
said office as required by law," covers the duty of paying over to
the parties entitled thereto money received by virtue of his office
and should be treated as a statutory bond.

3. SAME—*public officer and his sureties are liable as insurers
for money received by virtue of office.* A public officer and his
sureties are liable as insurers upon the officer's official bond for
money received by him by virtue of his office, and they are not
relieved from liability for the loss of the money though without
the officer's negligence or default.

4. SAME—*money paid to clerk by order of court is received by
him in his official capacity.* Under an order of court requiring the
clerk to accept a certain sum of money tendered by the defendants
in a pending suit and hold the same until the further order of the
court the clerk receives such money in his official capacity, and he
and his bondsmen are liable for the loss of the money by the fail-
ure of the bank in which the clerk deposited it.

5. SAME—*obligation of public officer to pay over funds received
is same whether funds are public or private.* The obligation of a
public officer to pay over private funds received by him by virtue
of his office is the same as his obligation to pay over public funds,
and the measure of accountability to be applied is the same in
either case.

6. APPEALS AND ERRORS—*when Appellate Court should not en-
ter final judgment on the pleadings.* Where the lower court, in an
action upon an official bond, holds that the defendants' affidavits of
merits show a good defense and enters a judgment in bar without a
trial, the Appellate Court, if it disagrees with such holding, should

not enter final judgment against the defendants for the plaintiffs' claim but should remand the cause, with directions to sustain a motion to strike the affidavits of merits from the files, leaving it open to the defendants to take such further action as they deem best.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. EDWARD M. MANGAN, Judge, presiding.

JOHN A. BROWN, and SABATH, STAFFORD & SABATH, (CHARLES B. STAFFORD, of counsel,) for appellants.

FRANK D. FULTON, and EUGENE L. GAREY, (ALFRED S. AUSTRIAN, and EARL J. GAREY, of counsel,) for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

In an action of debt on the official bond of Richard J. McGrath, as clerk of the superior court of Cook county, a judgment was rendered in favor of the defendants. The Appellate Court for the First District reversed this judgment, rendered a judgment against defendants for $577.50 and granted a certificate of importance and an appeal.

Assigning a breach of the condition of the bond, the declaration alleged that James Mitchell Hoyt and Emma Patten Hoyt, being defendants in a suit brought against them in the superior court by Vaclav Lala, tendered and paid to the clerk in accordance with an order of the court, to be held until the further order of the court, the sum of $577.50, and that afterwards the court ordered the clerk to pay the amount to the attorney for the Hoyts, which he failed to do. The defendants separately filed a plea of *non est factum,* together with notices of special matters of defense. An affidavit of claim was filed with the declaration and affidavits of merits with the pleas. The plaintiffs moved to strike from the files the pleas and affidavits of

merits, but the court denied the motion, and the plaintiffs electing to stand by their motion, the court rendered a judgment in bar of the action against the plaintiffs at their costs.

From the affidavit of claim it appears that on December 9, 1913, in the case of Vaclav Lala vs. James Mitchell Hoyt et al., in the superior court, the defendants tendered into court the sum of $577.50 in gold coin, which was paid to the appellant McGrath, the clerk of the court, in accordance with an order of the court made in said cause, as follows: "On motion of defendants' attorney it is ordered that leave be and is hereby given the defendants to file an amended plea to the consolidated counts of the plaintiffs' declaration filed herein, instanter; and it is further ordered that the clerk of this court accept the sum of five hundred seventy-seven dollars and fifty cents ($577.50) tendered herein by the defendants and to hold the same until the further order of this court." Afterward, on November 4, 1914, the court made the following order in the cause of Vaclav Lala vs. James Mitchell Hoyt et al.: "By agreement of parties in the above entitled cause, made by their respective attorneys, it is hereby ordered that the clerk of this court pay to defendants' counsel, E. L. Garey, the sum of $577.50, said sum being the amount heretofore paid into court by said defendants and deposited with the clerk of this court subject to further order of this court." Demand was made of the clerk for payment as directed by this order, but the clerk failed and refused to comply.

The affidavits of merits filed by the defendants aver that the receipt of the money, as stated in the declaration, was not in the official capacity of McGrath as clerk of the superior court, but was in his individual capacity under the order of the court, for which he was liable as bailee without hire, and that his refusal to pay the money when demanded of him was not willful but was because the money had been lost without any fault on his part; that on December 9, 1913, he deposited the money in the LaSalle Street

Trust and Savings Bank, a State banking institution incorporated under the laws of the State of Illinois and doing business in the city of Chicago, which was regarded as a safe banking institution; that in June, 1914, the bank was closed by the State bank examiner and its assets were placed in the hands of a receiver appointed by the circuit court of Cook county; that the clerk filed a petition in the receivership proceeding praying for an order directing the receiver to pay to him said sum of $577.50, together with all funds of like character, which petition is still pending; that in depositing the money in the LaSalle Street Trust and Savings Bank he was acting in good faith, in the exercise of ordinary care for the safety of the money; that he had no knowledge that the bank was not safe or was in any financial difficulty, or of anything which would cause any suspicion as to its safety, but that the bank was regarded as a safe and sound bank and was at the time engaged in actively carrying on the banking business; that he deposited the money in the name of Richard J. McGrath, clerk of the superior court of Cook county, in an account kept for the sole purpose of depositing and for the safe keeping of such funds, and informed the bank that the funds to be deposited by him in that account would be only funds entrusted to him under the orders of court and that he would be required to pay them on orders of the court, and that they were the funds of litigants in which he had no claim òr interest and were trust funds, and the bank agreed to accept them as such trust funds and to keep and preserve their identity as such trust funds; that thereupon he deposited all such funds entrusted to him in the bank in that account, including the sum of $577.50, and that he kept no other funds in that account or in that bank. He contends that such funds should be treated as a trust fund in the hands of the bank and should be given preference in payment out of the funds in the hands of the receiver, and that by rea-

son of the premises he is unable, without any fault or neg-
ligence on his part, to pay plaintiff the said sum of $577.50.

The questions argued are whether the clerk's receipt of
the money under the order of the court was by virtue of
his office, and whether it was his official duty, as clerk, to
pay it over when ordered by the court, and, if the receipt
and payment of the money were official duties of the clerk,
whether he was relieved from liability by the loss of the
money without his negligence or default.

Section 13 of chapter 25 of the Revised Statutes makes
it the duty of the clerk to attend the sessions of his court,
preserve all the files and papers thereof, make, keep and
preserve complete records of all the proceedings and de-
terminations thereof except in cases otherwise provided by
law, and do and perform all other duties pertaining to his
office as may be required by law or the rules and orders of
his court. Section 4 of the same chapter prescribes the
condition of his bond to be "for the faithful performance
of the duties of his office, and to pay over all moneys that
may come to his hands by virtue of his office, to the par-
ties entitled thereto, and to deliver up all moneys, papers,
books, records, and other things appertaining to his office,
whole, safe and undefaced, when lawfully required so to
do." The condition of the bond in question is: "If the
said Richard J. McGrath shall faithfully perform all duties
of said office, as required by law, then this obligation shall
be null and void, otherwise to remain in full force and ef-
fect." This condition is not in the language of the statute,
but the variance is not of such a substantial character as
to destroy the instrument as a statutory bond. (*Town of
Cicero* v. *Hall,* 240 Ill. 160; *Estate of Ramsay* v. *People,*
197 id. 572; *Purcell* v. *Town of Bear Creek,* 138 id. 524;
*Magner* v. *Knowles,* 67 id. 325.) By sections 13 and 4 the
duty of paying over all moneys that may come to his hands
by virtue of his office, to the parties entitled thereto, as
required by the orders of the court, is imposed upon the

clerk, and the bond conditioned for the faithful performance of all the duties of his office covers the duty of paying money as well as all other duties, and is in substantial
compliance with the statute, although it does not specifically
state each duty mentioned in the statute. If a bond is given
under authority of law it will not be held invalid because
not executed in the form required by the statute unless the
statute expressly so requires, but the statute will be construed to be directory, only, and a substantial compliance
with it will suffice. (Mechem on Public Officers, sec. 268.)
Such a bond is to be regarded not as a mere common law
obligation but as a statutory bond, and the measure of liability is for the breach of a statutory bond.

The clerk of the court is the keeper of its records and
seal, who issues process and makes, preserves and certifies
the records of its proceedings. He is not a collecting officer, and there is nothing in the nature of his office which
requires him to be the receiver and custodian of money
paid into court without an order of the court. So money
deposited with the clerk as a tender in a pending suit, without an order of the court, does not become a fund of the
court, though it would have become such fund if the court
had ordered the clerk to receive or hold it. (*Hammer* v.
*Kaufman,* 39 Ill. 87.) In *Baltimore and Ohio Railroad Co.*
v. *Gaulter,* 165 Ill. 233, it was held that money paid into
court under a decree upon a bill of interpleader, as a condition for granting an injunction and discharging the complainant, was a fund of the court, and when paid to the
clerk, though he was not named in the order, was received
by him in his official capacity and not as a mere depositary of the parties. As early as the case of *Doyle* v. *Teas,*
4 Scam. 202, the clerk of a court was recognized as the
proper official custodian of the funds of the court, it being
said with reference to a tender on a bill for specific performance, that "the tender must be followed by bringing the
money into court and depositing it, not according to the

English practice, with the register, but according to our practice, with the clerk." The same doctrine was recognized in *DeWolf* v. *Long,* 2 Gilm. 679, and, so far as we are advised or have been able to ascertain, it has been the uniform practice that money tendered or otherwise paid into court has been received and paid out under the orders of the court by the clerk, who has been regarded and treated as the custodian for the court of all such funds of the court. While there is no statute specifically imposing upon the clerk the duty of receiving and paying out money deposited in court, this long continued uniform practice has firmly established the rule stated in the American and English Encyclopedia of Law, (vol. 6, 2d ed. 142,) that "when money is paid into court by order of court the clerk is its proper custodian and receives it by virtue of his office, and upon his failure to account therefor a recovery may be had upon his official bond." It was so held in regard to a clerk of the United States circuit court in *Howard* v. *United States,* 184 U. S. 676. Though there was no statute authorizing the clerk to receive the money deposited, the court said (p. 683) : "But it is suggested that, in the absence of a statute distinctly so providing, the clerk was not entitled to receive the money deposited in payment and satisfaction of Stewart's claim. It is true that no statute declares, in words, that a clerk may receive money brought into court for the purposes of a pending suit, but it is clear that Henry county was entitled to bring into court and tender to its adversary the amount it was willing to pay in satisfaction of his claim. It cannot be that it was the duty of the judge of the court himself to have received the money and personally deposited it as required by law. No one has ever supposed that a judge was under obligation to perform such services. Who, then, was to receive the money? Plainly it was the duty of the clerk, who was the arm of the court, kept its records showing money paid in by suitors or officers, and was under bond conditioned that he would faith-

fully perform all the duties of his office. He was allowed by statute a commission 'for receiving, keeping and paying out money in pursuance of any statute or order of court.' (Rev. Stat. sec. 828.) It was well said by Judge Caldwell, delivering the unanimous judgment of the circuit court of appeals, that 'for more than a century the clerks of the circuit courts of the United States have been receiving and paying out the moneys of suitors in those courts in the usual and customary manner, and during that time neither the clerks nor the suitors nor the court ever dreamed that they were performing this service as private individuals and were not officially responsible for the moneys they were receiving as such clerks.' "

Distinguishing this case, counsel for the appellants state that the United States statute allows the clerk a commission for receiving, keeping and paying out money in pursuance of any statute or order of the court while the statute of Illinois contains no such power, and in this case the clerk was paid nothing for his services in taking and keeping the money. This distinction is of no importance, for the statute fixes the clerk's compensation at $9000 a year, which he received for all his services in the performance of the duties of his office. The rule of law is well settled in this State that a public officer and his sureties are liable upon his official bond for money received by him by virtue of his office as an insurer, and are not relieved from liability by the loss of the money without the officer's negligence or default. It was so held in *Estate of Ramsay v. People, supra, Swift v. Trustees of Schools,* 189 Ill. 584, *Oeltjen v. People,* 160 id. 409, and *Thompson v. Board of Trustees,* 30 id. 99. In those cases it was clearly decided that the liability of the officer was not that of a bailee but that he was an insurer of the funds coming to his possession, and could not be relieved from payment by unavoidable accident or by the misfeasance or negligence or felony of another, or by any other reason than the act of God or the

public enemy. The same doctrine is held in *United States*
v. *Prescott,* 3 How. 578, and *Smythe* v. *United States,* 188
U. S. 156. The decisions of this court have settled the
question in this State, and, though there is a sharp conflict
of decision in other States, are in accordance with the great
weight of authority elsewhere. *Morbeck* v. *State,* 28 Ind.
86; *District Township of Taylor* v. *Morton,* 37 Iowa, 550;
*Rose* v. *Douglass Township,* 52 Kan. 451; *Inhabitants of
Hancock* v. *Hazzard,* 12 Cush. 112; *Perley* v. *County of
Muskegon,* 32 Mich. 132; *County of Redwood* v. *Tower,*
28 Minn. 45; *Griffin* v. *Mississippi Levee Comrs.* 71 Miss.
767; *State* v. *Moore,* 74 Mo. 413; *Jefferson County Comrs.*
v. *Lionberger,* 3 Mont. 231; *Bush* v. *Johnson County,* 48
Neb. 1; *State* v. *Nevin,* 19 Nev. 162; *McEachron* v. *Town-
ship of New Providence,* 35 N. J. L. 528; *Mason* v. *Direct-
ors of the Poor,* 126 Pa. 445; *Tillinghast* v. *Merrill,* 151
N. Y. 135; *Wilson* v. *Wichita County,* 67 Tex. 647; *Fair-
child* v. *Hedges,* 14 Wash. 117; *Supervisors of Omro* v.
*Kaime,* 39 Wis. 468.

The subject matter of the cases which have been cited
was public money. It is argued on behalf of appellants that
there is a distinction in the liability of a public officer be-
tween public funds and private funds, and the distinction
seems to have been recognized in *People* v. *Faulkner,* 107
N. Y. 477. So, also, in argument in the cases of *Wilson*
v. *People,* 19 Colo. 199, and *Fairchild* v. *Hedges, supra,* al-
though the distinction was not involved in the latter case.
The existence of any such distinction was denied in the
cases of *Morgan* v. *Long,* 29 Iowa, 434, *Havens* v. *La-
thene,* 75 N. C. 505, and *State* v. *Gatzweiler,* 49 Mo. 17.
In the case of *Northern Pacific Railway Co.* v. *Owens,* 86
Minn. 188, the question was directly involved, the suit be-
ing an action against a clerk of the district court for money
paid into court in a condemnation proceeding and lost
without the fault of the clerk, through the failure of the
bank in which he had deposited it. The court held that a

public officer is liable for the loss of private funds received and held by him in his official capacity, and that in respect to his liability for the loss of money in his official custody there is no distinction between public and private funds. The court said: "Upon principle we are unable to make any distinction between public and private funds in the hands of a public officer as to his liability therefor. In both cases the funds are paid to the officer in obedience to the mandate of the statute, which makes no distinction between them and imposes the same duty as to each. The same bond secures both in the same terms. Can it be true that a county can recover on such a bond the amount of a forfeited recognizance lost by the clerk without his fault, but that money received by him in his official capacity for a private party and so lost cannot be recovered by an action on the same bond? It is not the character of the fund but the statute and the considerations of public policy which imposed the liability upon the officer. The same considerations of public policy which require the public officers who receive public money to be held to a strict measure of responsibility therefor apply just as forcibly to private funds officially received by them, for private property is just as sacred as public property." The obligation of the officer to pay over private funds is the same as his obligation to pay over public funds, and the measure of accountability to be applied is the same in either case.

The Appellate Court erred in entering a final judgment on the pleadings against the defendants. There was no trial in the circuit court. That court held that the defendants' affidavits of merits showed a good defense to the action. The Appellate Court differed from the circuit court upon this question of law. Its judgment should not have been final against the defendants for the plaintiffs' claim but should have remanded the cause, with directions to sustain the motion to strike the affidavits of merits and pleas,

leaving it open to the defendants to take such action there-- after as they might be advised.

The judgment of the Appellate Court will be reversed and the cause remanded to the circuit court.

*Reversed and remanded.*