(No. 1433— ▮▮▮▮▮▮)

DAVID FELMLEY, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed April 25, 1929.*

DAVID FELMLEY, pro se.

OSCAR E. CARLSTROM, Attorney General; ROY D. JOHNSON, Assistant Attorney General, for respondent.

Mr. JUSTICE LEECH delivered the opinion of the court:

The claimant in this case is David Felmley, President of the Illinois State Normal University and is based upon an advancement from his private funds to cover an equal sum

stolen from the vault of the Illinois State Normal University on March 12-13, 1928, same being sum of $653.28.

It is not denied by the respondent that the money was stolen from the safe of the Illinois State Normal University and the Attorney General states that his office is not requiring claimant to submit evidence in this case as the facts are not disputed.

In a letter dated Springfield, Illinois, November 28, 1928, to Hon. Oscar Nelson, Auditor of Public Accounts, Springfield, Illinois, the same being written by the Attorney General, correspondence is as follows:

"State of Illinois, Law Department
Springfield, November 28, 1928.

Oscar E. Carlstrom,
Attorney General
    File No. 1704
    State Officers:
    Liability for funds.
Hon. Oscar Nelson
*Auditor of Public Accounts*
Springfield, Illinois.
Dear Sir:

I have your letter of recent date, in which you state that on March 21, 1928, a remittance was received from the Illinois State Normal University, showing a deduction on account of money stolen from its vault on March 12th. Attached to the itemized remittance sheet is an affidavit of the President of the University in support of the claim that the combination of the vault had been broken off, the vault opened and the contents stolen. You desire to know if under the facts stated the deduction should be allowed.

In reply, I will say that the decisions of the courts in this country are somewhat conflicting on the question presented by your letter but the great weight of authority is in favor of holding public officers handling public funds to a strict accountability. In a majority of the jurisdictions the liability of a receiver of public moneys is that of an insurer. The basis of this rule is public policy. In the case of *Tillinghast* v. *Merrill*, 151 N. Y. 135, the Court said:

'In the case of an officer disbursing the public moneys much may be said in favor of limiting his liability where he acts in good faith and without negligence, and a strong argument can be framed against the great injustice of compelling him to respond for money stolen or lost while he is in the exercise of the highest degree of care and engaged in the conscientious discharge of duty. When considering this side of the case it shocks the sense of justice that the public official should be held to any greater liability than the old rule of the common law which exacted proof of misconduct or neglect.

It is at this point, however, that the question of public policy presents and it may well be asked whether it is not wiser to subject the

228

custodian of the public moneys to the strictest liability, rather than open the door for the perpetration of fraud in numberless ways impossible of detection thereby placing in jeopardy the enormous amount of the public funds constantly passing through the hands of disbursing agents.

We think the weight of the argument, is in favor of the rule of strict liability which requires a public official to assume all risk of loss and imposes upon him the duty of account as a debtor for funds in his custody.'

In the case of *People* v. *McGrath*, 279 Ill. 550, 557, the court said:

"The rule of law is well settled in this state that a public officer and his sureties are liable upon his official bond for money received by him by virtue of his office as an insurer, and are not relieved from liability by the loss of the money without the officer's negligence or default. It was so held in *Estate of Ramsay* v. *People, Supra; Swift* v. *Trustees of Schools*, 189 Ill. 584; *Oeltjen* v. *People*, 160 id. 409, and *Thompson* v. *Board of Trustees*, 30 id. 99. In those cases it was clearly decided that the liability of the officer was not that of a bailee but that he was an insurer of the funds coming to his possession, and could not be relieved from payment by unavoidable accident or by the misfeasance or negligence or felony of another, or by any other reason than the act of God or the public enemy. The same doctrine is held in *United States* v. *Prescott*, 3 How, 578, and *Smythe* v. *United States* 188 U. S. 156. The decisions of this court have settled the question in this State, and though there is a sharp conflict of decision in other states, are in accordance with the great weight of authority elsewhere."

From a consideration of the foregoing, I am, therefore, of the opinion that the affidavit in question is insufficient for the purpose of allowing the deduction, and I am of the further opinion that the Legislature alone can afford relief in the premises.

Yours very truly,

OSCAR E. CARLSTROM, (Signed)
*Attorney General."*

The Attorney General in his statement further says:

"That from this correspondence, it will be noted that the Attorney General's office has taken the position that the decisions of the courts in this country are somewhat conflicting on the question presented, but the great weight of authorities is in favor of holding officers, handling public funds, to a strict accountability, and that in a majority of the jurisdictions, the liability of a receiver of public moneys is that of an insurer; the basis of this rule being public policy."

The court notes that Mr. Shelton recommends to the court that $653.28 which was stolen and afterwards advanced from private funds to cover an equal amount stolen from the State Normal University, be refunded to President Felmley.

However, in view of the cases cited by the Attorney General we are of the opinion that it would be against public policy for this court to establish a precedent and allow this claim.

It would be opening the doors of carelessness and negligence on the part of the officers of the State Institution.

We, therefore, adhere to the law as laid down by the Attorney General and deny the claim.