The People of the State of Illinois ex rel. Oscar Nelson, Auditor of Public Accounts of the State of Illinois, Complainant, A. F. Delander, County Clerk, Appellee, v. Joliet Trust and Savings Bank, Defendant. J. E. Morrison, Receiver, etc., Appellant.

Gen. No. 8,725.

Opinion filed May 10, 1934.

ROBERT E. HALEY, for appellant.

D. R. ANDERSON, for appellee.

MR. JUSTICE DOVE delivered the opinion of the court.

On January 7, 1933, J. E. Morrison, having theretofore been appointed receiver of Joliet Trust & Savings Bank, filed in the circuit court of Will county his petition reciting that A. F. Delander was indebted to the bank in the sum of $4,434.51, evidenced by two notes held by the receiver; that at the time the bank closed, Delander had two checking accounts therein, one in his own name in the amount of $61.45, and another carried on the books of the bank in the name of "Albion F. Delander, County Clerk" in the amount of $7,422.10; that Delander had presented his claim to the receiver

and sought to obtain a set-off and the receiver therefore sought the instructions of the court before allowing the same.

It appears from the evidence that appellee was, at the time of the hearing, county clerk of Will county and had been for the 11 preceding years, and as county clerk he received divers sums of money from various sources, such as witness fees, advance court costs in civil cases, moneys paid by persons convicted of nonsupport and bastardy, and moneys paid by parties to redeem property from tax sales; that for convenience he kept two accounts in the Joliet Trust & Savings Bank, designated as stated in the petition of the receiver, and the amount on deposit to his credit in both accounts aggregated $7,483.55 at the time the bank closed. While the bank was a going concern, he borrowed money therefrom, evidencing the same by executing his notes and pledging certain securities to secure the payment thereof, and these notes and securities came into the hands of the receiver when he took charge. The amount due on these notes, together with accrued interest to the date of the appointment of the receiver, aggregated $4,506.80, and the chancellor, upon the hearing, ordered that this sum be applied by said receiver as a set-off in reduction of the total claim of the appellee, that the balance of $2,976.75 be allowed as a common claim, and the two principal notes be canceled and the collateral deposited to secure the payment thereof be returned by the receiver to the appellee. From this order an appeal has been perfected by the receiver and the record is here for review.

Counsel for appellant insists that the record in this case does not disclose what portion of the deposit of the county clerk was earned fees or what portion was due individuals, and therefore it must be presumed that the amount in the bank to his credit as county

clerk was all public moneys held by him by virtue of his office, that public funds cannot be used to pay private debts and appellee's obligation to the bank being his private debt, he should not in equity be permitted to set off the same against public funds held by him as county clerk.

Under our statute, the county clerk, before assuming the duties of his office, must execute a bond in such penalty and with such security as the county board shall deem sufficient, conditioned that he shall perform the duties of his office in the time and manner prescribed by law, and when he shall be succeeded in office, shall surrender and deliver over to his successor in office all books, moneys and other things belonging to the county and appertaining to his office. It is his duty to safely keep the moneys coming into his hands and on the first day of June and December of each year report to the county board the receipts and expenditures of his office and pay to the county treasurer at such stated times whatever amount may be due the county. The record in this case discloses that appellee had executed a bond in the sum of $15,000 as required by law, that the bank closed January 25, 1932, and appellant was appointed receiver on February 20, 1932.

It is well settled in this State that a public officer is an insurer of moneys received by him by virtue of his office and is liable upon his bond for the loss of public funds deposited in a bank and lost through its failure. *Estate of Ramsay v. People,* 197 Ill. 572; *Swift v. Trustees of Schools,* 189 Ill. 584; *Oeltjen v. People,* 160 Ill. 409; *Thompson v. Board of Trustees,* 30 Ill. 99; *People v. McGrath,* 279 Ill. 550. Assuming, therefore, that all the money which appellee had intrusted to the safe-keeping of the bank was public funds and belonged to Will county, appellee was personally responsible to Will county therefor. The office of county clerk is a fee office and, under the statute,

the county clerk was only required to pay to the county treasurer on June first following the closing of the bank in January, whatever sum, exceeding his fees, was due from him to the county. If, however, an unascertained portion of this deposit belonged to individuals other than appellee and he held it by virtue of his office as county clerk, he was likewise personally responsible to those individuals therefor. Whether then the amount represented by this deposit was money in which Will county had an interest or whether an undetermined portion belonged to appellee and the balance to other individuals, appellee personally was liable to such other individuals and to Will county therefor, and payment thereof was covered by the provisions of his official bond.

In *Coburn v. Carstarphen*, 194 N. C. 368, 55 A. L. R. 819, the facts were very similar to the facts in the instant case, except the depositor was county treasurer instead of county clerk, and in holding the money of the county deposited in the name of the treasurer as treasurer could be set off against the personal note of the treasurer, the court said: "Although the deposit in the sum of $2,801.91 was made by defendant with moneys belonging to Martin county and stands on the books of the bank in his name as treasurer, he is personally liable to the county for the moneys received by him as treasurer. He is solvent, and must account to the county for the amount of the deposit. As between the bank and the defendant, the bank is liable primarily to the defendant, and not to the county. His contention that, upon the facts agreed, he is entitled to have the amount of his indebtedness to the bank deducted from the amount due him by the bank, must be sustained, not only upon principles of justice and equity, but also upon well-supported authority. In *Funk v. Young*, 138 Ark. 38, 5 A. L. R. 79, 210 S. W. 143, it was held that the maker of a note to a bank, which

thereafter became insolvent, may offset his indebtedness to the bank upon said note, by a deposit in his name as trustee, where he was personally liable to his *cestui que trust* for the amount of the deposit. The facts in that case are almost identical with those in the instant case. The decision is well supported by authorities. In the opinion of the court it is said: 'The trend of all modern decisions is toward liberality in the allowance of set-offs in the case of insolvency of the party against whom the set-off is claimed, to the end that only the true balance may be required to be paid to the representative of the estate of the insolvent.' ''

In *Miller v. Franklin Bank,* 1 Paige (N. Y.) 444, it was held that the public administrator of the City of New York is entitled to offset against a debt from him to the bank a demand for deposits in the bank whether made in his own name or as public administrator. The court said that as between him and the bank he stood in the same situation that an attorney would who had deposited in the bank for safe-keeping the moneys collected for different clients, in one general account in his name as attorney, to be drawn out on his own check when called for. The court further said that in neither case could the bank object to pay the money to the depositor, or to allow it to be offset against a demand in favor of the bank, unless they had notice from the persons having an equitable claim thereon not to pay it.

The reasoning in the foregoing cases appeals to our sense of justice and right. While a court of equity will not generally allow a set-off of debts occurring in different rights, special circumstances may occur creating an equity that will justify such an interposition. 24 R. C. L. 871. ''Although as a general rule, equity, following the law, will not allow a set-off of debts accruing in different rights, it is well settled that a court of equity will take cognizance of cross-claims be-

tween litigants though wanting in mutuality and set off one against the other whenever it becomes necessary to effect a clear equity or prevent irremediable injustice." 24 R. C. L. 865. In *Walker v. Doane,* 108 Ill. 236, our Supreme Court said: "Where there is anything peculiar in a case, so as to render it impossible for exact justice to be done by a court of law under the statute, a court of chancery will afford relief through the medium of an equitable set-off." In *Chicago, D. & V. R. Co. v. Field,* 86 Ill. 270, it was said: "There is a natural equity that cross demands should be offset against each other; and that the balance only should be recovered; and the court of chancery recognizes this principle and acts upon it in cases where the law cannot give a remedy in a separate suit, in consequence of the insolvency of one of the parties."

Counsel for appellant insists that it would be highly inequitable to permit the private debts of the county clerk to be set off against his deposit of public funds and calls our attention to the well recognized rule that where funds are held by an individual as a public official or as agent or in any representative capacity, he has no authority to pay his individual indebtedness therewith, nor in case of deposits by fiduciaries could the bank, if it has knowledge of the trust character of the funds apply them in satisfaction of an individual indebtedness of the depositor. 3 R. C. L. 593. *Clemmer v. Drovers Nat. Bank,* 157 Ill. 206. Whether the Joliet Trust and Savings Bank, while it was a going concern, could have legally applied this deposit, carried on their books in the name of appellee as county clerk, to discharge his private indebtedness to the bank, does not arise on this record, nor would an answer to that question solve the question here presented for determination. The bank is no longer a going concern; it has become insolvent, and the status of the parties

interested has changed, and the character of their relations altered. Appellee is personally liable to the county or to others for the amount of this deposit. The liquidation of the bank is in progress and the liquidating agent has applied to a court of equity for instructions. The receiver is not only the representative of the creditors and stockholders but he holds the assets of the bank as an officer of the court for the benefit of all persons having a legal interest in an honest and efficient control and distribution of its assets. *Niblack v. Feldman,* 204 Ill. App. 443.

In our opinion it would be highly inequitable and inconsistent with the principles of fair dealing not to permit this set-off and the fact that appellee had pledged securities to secure the payment of his personal note is of no importance nor does it in any way affect the equities of the parties. Neither is there any merit in appellant's contention that the record contains no evidence tending to prove that appellee was solvent or that the sureties on his bond were financially responsible. In the absence of any proof to the contrary the county board is presumed to have done its duty and it would not have approved a worthless bond. Insolvency is never presumed and if the sureties upon the bond of appellee were financially responsible when the bond was given it is presumed that they as well as appellee are now financially responsible and solvent.

The order of the chancellor is affirmed.

*Order affirmed.*