BANK OF BAY BISCAYNE, *Plaintiff in Error*, v. CHARLES BALL, *Defendant in Error*.

Division A.

Opinion filed April 4, 1930.

Petition for rehearing denied May 22, 1930.

746

*R. F. Burdine,* for Plaintiff in Error;

*Robert J. Boone,* for Defendant in Error.

ELLIS, J.—A judgment was obtained by Charles Ball, the defendant in error, against the Bank of Bay Biscayne in the Circuit Court for Dade County in the sum of seven thousand and forty dollars. To which judgment the Bank took a writ of error.

The only question presented is whether a Bank which "certifies" a check which is presented by the holder of it in due course is bound by such certification to pay the amount for which the check was certified to the holder in due course who presented the check for certification.

A check was drawn on the Bank of Bay Biscayne by S. M. Weisberger on August 12, 1925, for the sum of seven thousand and forty dollars payable to the order of Seminole Company. The check was endorsed by the payee to Seminole Properties and by the latter endorsed in blank and on the 15th of August, 1925, came in due course into the possession of Charles Ball who presented it to the Bank which at Ball's request "certified" it. Later the

check was presented at the Bank by Ball for payment and payment refused. Ball thereupon brought his action against the Bank.

The certification by the bank as it appears on the check is in the following words and figures: "CERTIFIED NO. 17301 Good for $7040. only when properly endorsed Aug. 15, 1925 BANK OF BAY BISCAYNE Miami, Florida, E. W. GILMANN, Teller."

There is no question as to the authority of the Bank officer to certify the check nor as to the form of the certificate nor the signification of it. It was a definite statement by the Bank that the drawer of the check had on deposit at the Bank at the time the check was presented for certification, or that his account as the same appeared upon the books of the Bank, showed a credit balance sufficiently large or that his credit at the Bank was sufficiently strong to insure the payment of the check by the Bank when presented properly endorsed for payment. It was not in form a promise to pay supported by a valuable consideration. It was a mere statement of a fact.

No greater obligation rested upon the Bank to pay the check after it was certified than before it was certified unless the certification constituted a valid obligation to pay or promise that the funds of the drawer would not be withdrawn or that it raised an estoppel of the Bank to deny its liability on the check as a drawee on a time draft after acceptance.

The check was certified by the Bank after delivery on presentation by the holder. In such case the rule most generally upheld by the courts and which this court will follow is that the Bank becomes the absolute debtor of the holder and the drawer is released. The principle is that a certificate of a bank that a check is good is equivalent to acceptance. See Sec. 6926 C. G. L. 1927; Merchants

National Bank v. State National Bank, 10 Wall. 604, 19 L. Ed. 1008; First National Bank v. Whitman, 4 Otto 343, 24 L. Ed. 229; Metropolitan Nat. Bank of Chicago v. Jones, 137 Ill. 634, 27 N. E. R. 533, 31 Am. St. R. 403, 12 L. R. A. 492; Minot v. Russ, 156 Mass. 458, 31 N. E. R. 489, 32 Am. St. R. 472, 16 L. R. A. 510; Detroit First Nat. Bank v. Currie, 147 Mich. 72, 110 N. W. R. 499, 118 A. S. R. 537, 9 L. R. A. (N. S.) 698; Jackson Paper Mfg. Co. v. Commercial Nat. Bank, 199 Ill. 151, 65 N. E. R. 136, 93 Am. St. R. 113, 59 L. R. A. 657.

The reason given for the rule is forcefully expressed by Mr. Justice Swayne in Merchants National Bank v. State National Bank, *supra.*

"All the authorities, both English and American, hold that a check may be accepted, though acceptance is not usual. Robson v. Bennett, 2 Taunton, 395; Grant, Bkg., 89 Chit. Bills, 10 Ed., 261; Boyd v. Emmerson, 2 Ad & E., 184; Kilsby v. Williams, 5 B. & Ald., 816; Story, Prom. N., secs, 489, 490. "By the law merchant of this country, the certificate of the bank that a check is good is equivalent to acceptance. It implies that the check is drawn upon sufficient funds in the hands of the drawee, that they have been set apart for its satisfaction, and that they shall be so applied whenever the check is presented for payment. It is an undertaking that the check is good then and shall contine good, and this agreement is as binding on the Bank as its notes of circulation, a certificate of deposit payable to the order of the depositor, or any other obligation it can assume. The object of certifying a check as regards both parties, is to enable the holder to use it as money. The transferee takes it with the same readiness and sense of security that he would take the notes of the Bank. It is available

also to him for all the purposes of money. Thus it continues to perform its important functions until in the course of business it goes back to the Bank for redemption and is extinguished by payment.

"It cannot be doubted that the certifying Bank intended these consequences, and it is liable according. To hold otherwise would render these important securities only a snare and delusion."

"A bank incurs no greater risk in certifying a check than in giving a certificate of deposit. In well regulated banks the practice is at once to charge the check to the account of the drawer, to credit it in "certified check account," and when the check is paid, to debit that account with the amount. Nothing can be simpler or safer than this process. "The practice of certifying checks has grown out of the business needs of the country. They enable the holder to keep or convey the amount specified with safety. They enable persons not well acquainted to deal promptly with each other and they avoid the delay and risks of receiving, counting and passing from hand to hand large sums of money. "It is computed by a competent authority that the average daily amount of such checks in use in the City of New York, throughout the year, is not less than $100,000,000.

"We could hardly inflict a severer blow upon the commerce and business of the country than by throwing a doubt upon their validity.

"Our conclusions as to their legal effect are supported by authorities of great weight. Bickford v. Nat. Bk., 42 Ill. 238; Willets v. Phoenix Bk., Duer, 121; Barnet v. Smith, 10 Fost. (N. H.), 256; Meads v. Mech. Bk., 25 N. Y. 146; Far. and Mech. Bk. v. Butchers' and Drov. Bk., 4 Duer, 219; Far. and

Mech. Bk. v. Butchers' and Drov. Bk., 14 N. Y. 624; Brown v. Leckie, 43 Ill. 497; Gir. Bk. v. Bk. of Penn., 39 Pa. St. 92.''

The judgment is affirmed.

TERRELL, C. J., AND WHITFIELD, STRUM AND BUFORD, J. J., concur.

BROWN, J., disqualified.