JOHN S. PHIPPS and MARGARITA PHIPPS, his wife, and MORTGAGE DISCOUNT COMPANY, a corporation, *Appellants,* v. FRANK G. WATSON, as Executor of, and sole devisee under, the last will and testament of JENNIE E. WATSON, deceased, *Appellee.*

147 So. 234.

En Banc.

Opinion filed March 3, 1933.

Re-hearing denied April 5, 1933.

*Loftin; Stokes & Calkins,* for Appellants;

*Crawford & May,* for Appellee.

TERRELL, J.—On three previous occasions different phases of this case have reached us for adjudication. Quinn v. Phipps, 93 Fla. 805, 113 So. 419; Watson v. Phipps, 99 Fla. 568, 126 So. 778, and Phipps v. Quinn, 99 Fla. 1340, 128 So. 849. The record in all three cases is made a part of the record in this appeal which emanates from a suit to foreclose a vendor's lien arising from a mortgage executed by Quinn to Mrs. Watson covering the identical lands involved in the three appeals enumerated.

The mortgage executed by Quinn to Mrs. Watson was held to be null and void in Quinn v. Phipps, *supra,* as to the former, on the theory that when Quinn purchased the lands from Mrs. Watson on which the mortgage was executed he was acting as the agent of Phipps and that consequently the transaction should have been consummated in the name of Phipps. The purpose of Quinn v. Phipps was to have Phipps decreed to be the owner of the lands described in the mortgage, that Quinn took them in trust for Phipps and that Mrs. Watson be required to convey them to Phipps on his complying with the option agreement made between her (Mrs. Watson) and Quinn.

Quinn v. Phipps was instituted in the Circuit Court in April, 1922. In May following Mrs. Watson made the conveyance to Quinn as per terms of the option agreement, and Quinn in turn executed the mortgage to Mrs. Watson. In March, 1923, Phipps deposited $50,000 in the registry of the court to insure payment for the lands and in August, 1924, a final decree in the Circuit Court was entered in favor of Phipps. That decree was affirmed by this Court in April, 1927, but in March previous the Farmers Bank and Trust Company in which Phipps deposited the $50,000 was closed and Mrs. Watson died prior to the affirmance of the final decree. In April, 1927, Phipps deposited an additional $50,000 in the registry of the court.

In August, 1927, Phipps v. Quinn, *supra,* was instituted, seeking to recover from the clerk of the court the second $50,000 paid into the registry of the court, on the theory that it was paid on the advice of counsel, but that he later found that it was not necessary to protect his interest. The clerk and Phipps' attorneys having been made parties defendant replied to the rule to show cause setting up the facts of the deposit. Phipps moved to strike these replies, but his motion was denied and on appeal to this Court the cause was dismissed.

In September, 1927, Watson v. Phipps, *supra,* was instituted for the purpose of rescinding the deed from Mrs. Watson to Quinn. A demurrer to the bill was sustained and the cause was dismissed. Appeal was prosecuted to this Court and the decree below was affirmed, in March, 1930.

The instant suit was begun in April, 1930. The ultimate question presented for our adjudication is whether Mrs. Watson or Phipps should suffer the loss of the $50,000 deposited by Phipps in the registry of the court to protect his interest in the lands involved in the three suits. It is

brought here on appeal from an order of the chancellor overruling a general and a special demurrer to the bill of complaint brought by the executive of Mrs. Watson against Phipps, et al.

Appellant contends that the deposit by Phipps in the registry of the court was substituted for the land to secure the mortgage, that it was sanctioned by law and its application adjudicated by the court in its final decree of August 6th, 1924, and hence became a fund in court, the loss of which fell on the party (Mrs. Watson) decreed to be entitled to it. It is also contended by appellant that all the rights of the parties were determined by the final decree of August 6th, 1924, and that the affirmance thereof by the Supreme Court related back thereto, that by force of the statute (Section 4952, Compiled General Law of 1927) said decree was to all intents and purposes a conveyance of the lands to Phipps and an extinguishment of the mortgage thereon which cannot now be enforced against Phipps because it was given by Quinn after filing the notice of *lis pendens* in a suit (Quinn v. Phipps, *supra*) to which the mortgagee was a party and which resulted in a decree holding that Quinn never had any title or interest in the land and that the deed by which Mrs. Watson conveyed it to Quinn was null and void.

As against the contention of appellant, appellee contends that the alleged deposit in the registry of the court was not followed up and made good by *profert in curia,* that it was in fact no deposit, that said deposit was not substituted for the land, that the final decree of August 6, 1924, had no such effect as that contended for by appellant, and that the statute (Section 4952, Compiled General Laws of 1927) had no application to this case.

In our view it becomes unnecessary to discuss the general contentions of appellant or of appellee. The question of

whether Phipps or Mrs. Watson should suffer the loss of the fund paid into registry of the court by Phipps must turn on the fact of whether or not it was paid in under order or sanction of the court or was recognized by the court to be a fund *in custodia legis* subject to protection and disbursement solely by order of the court.

The rule is well settled that when a party litigant pursuant to court order, pays into the registry of the court as an unconditional tender a sum of money which he contends is due by him to his adversary litigant in a cause pending between them the title to the sum passes irrevocably to the adversary though he does not accept it until the conclusion of the litigation or at some other time. If subsequent to payment into court or recognition by the court the sum is lost or stolen the loss must fall on the litigant to whom title passes or for whose benefit it was tendered. The tender in other words becomes a fund *in custodia legis* subject to the order of the court or the pleasure of the depositor. Agoure v. Peck, 17 Cal. App. 759, 121 Pac. 706; Hammer v. Kaufman, 39 Ill. 87; Reinhold v. Haussen, 169 Ill. App. 334, 336; People v. McGrath, 279 Ill. 550, 117 N. E. 74; *In re* Brofer Coal and Mining Company, 4 Fed. (2nd) 33; Mann v. Sprout, 185 N. Y. 109, 77 N. E. 1018, 5 L. R. A. (N. S.) 561; 7 Ann. Cas., note 97 citing many cases; Dickenson v. Helms, 29 Gratt. 462; Taylor v. Lancaster, 33 Gratt. 1; Gill v. Barbour, 80 Va. 11, 26 R. C. L. 656. The rule is also settled by those decisions that if funds are paid into the registry of the court by a stranger or one having no right to do so and without the court's knowledge or sanction or in such a manner that they may be withdrawn or their disposition directed at the will of the depositor, they do not become funds *in custodia legis* and if lost under such circumstances the loss must fall on the one making the deposit.

In either event the determining criterion to place the loss is whether the fund placed on deposit was subject to the order of the court, the pleasure of the depositee, or the will of the depositor. That is, to impose the loss on Mrs. Watson, the deposit must have been absolute and without reservations and a release of all control over it by Phipps. If he retains a modicum of control over it and loss ensues he must bear the loss.

This rule applies in both tort and contract actions because in either event the fund paid in by the depositor passes to the depositee. Another rule may apply where a tender is made into court as a prerequisite to the enforcement of a right. Coltrane v. Peacock (Tex. Civ. App.), 91 S. W. 841; Lazier v. Cady, 44 Wash. 339, 87 Pac. 344; Dunn v. Hunt, 76 Minn. 196, 78 N. W. 1110.

A tender is nothing more than an offer to pay. When paid into court by the depositor on a plea of tender, the entire amount paid in belongs to the depositee although at the trial he is awarded a verdict for a sum less than the amount paid in. Note to Mann v. Sprout, 7 Ann. Cas. 95, text 97, and cases above cited. The object of payment into court is to place the money tendered where the depositee will be sure to get it and where the depositor cannot dispute his (depositee's) right to it. Becker v. Boon, 61 N. Y. 317.

. The contention that Phipps' tender was not followed by *profert in curia* is not well grounded. It was in the nature of a certified check drawn by him on Farmers Bank and Trust Company payable on presentation. It is charged that Phipps had an understanding with the bank that until the check was paid, money from the fund against which it was drawn would be loaned and he (Phipps) would get the interest on the loan, including a broker's commission for such part of it as he loaned himself. It was also charged that it was understood between Phipps and the clerk that

the check would not be presented for payment till the money was needed. It is further contended that the certified check was exchanged for a trust certificate two days before the bank closed, but this is not material if both were of equal value and dignity. None of these contentions is pertinent if the check was actually cashed. There appears to have been no order of the court in reference to the check or the trust certificate prior to the final decree of August 6, 1924, but the receipt of the clerk for the certified check made the bank creditor rather than Phipps. It was subject to payment at all times and funds were required to have been placed in the bank for its payment.

If the bank had closed prior to the final decree the result might have been different, though we are not called on to and do not decide that question. The final decree treated the certified check as cash and adjudicated its disposition. It was certainly from that time a fund *in custodia legis* subject only to the pleasure of the depositee or the order, protection, and control of the court. If Phipps or the bank actually retained any control over the deposit when made, the final decree concluded such control as thenceforth the title to it was in Mrs. Watson.

The court was warranted in treating the certified check as cash. Under the law merchant, the object of a certified check is to enable the holder to use it as money. It implies ample funds in the hands of the drawee to pay it and that they have been set aside and will be used for that purpose when the check is presented for payment. It passes in the same sense as the notes of the bank, it is available to the holder the same as money and continues to perform this function in the course of business till it returns to the bank for redemption and is extinguished by payment. Bank of Bay Biscayne v. Ball, 99 Fla. 745, 128 So. 491; Merchants

National Bank v. State National Bank, 10 Wall (U. S.) 604, 19 L. Ed. 1008.

It has been held that as a matter of right and law where one of two parties must suffer a loss, the loss should fall on the one who had the best opportunity to protect himself and is the most at fault. German-American Sav. Bank of Burlington v. Spokane, 17 Wash. 315, 49 Pac. 542, 38 L. R. A. 259. From August, 1924, when the final decree was entered, to March, 1927, when the Farmers Bank and Trust Company closed, more than two and one-half years, the tender lay in the registry of the court, subject to Mrs. Watson's pleasure. She did not protect herself, though she could have done so. Phipps could not have withdrawn the fund after the final decree. True, an appeal was taken in which a supersedeas was issued. It is contended that Mrs. Watson was not affected by this appeal as she was not a party to it, but whether she was or was not is immaterial. She could have taken the tender before the appeal, but since she elected not to do so the ensuing loss must fall on her. Palm Beach Estates v. Croker decided August 31, 1932, re-hearing denied October 25, 1932.

If funds were not in fact placed in the bank to redeem the certified check when presented for payment then the tendee was fictitious and the final decree had no such status as that ascribed to it in this opinion. Neither would the rule laid down here as to the ownership of the fund be pertinent.

The bill stated a ground for equitable relief so the demurrer was properly overruled.

Affirmed.

Davis, C. J., and Whitfield, Brown and Buford, J. J., concur.