## REPUBLIC INS. CO. v. HIGHLAND PARK INDEPENDENT SCHOOL DISTRICT.*

### No. 12643.

Court of Civil Appeals of Texas. Dallas.
Nov. 26, 1938.

Rehearing Denied Jan. 14, 1939.

*Writ of error dismissed — S.W.2d —.

Smithdeal, Shook & Lefkowitz and J. L. Shook, all of Dallas, for appellant.

Robert M. Vaughan, J. W. Hassell, and Bell, Goode, Heinen & Miller, all of Dallas, for appellee.

YOUNG, Justice.

On February 2, 1935, appellee, as plaintiff, brought suit in a district court of Dallas County against appellant, Republic Insurance Company, for personal property taxes in the amount of $11,819.53, alleging that the District's Board of Equalization had fixed total gross valuations of the Company at $2,095,661.42, which, after the customary 60% deduction and based upon a tax rate of 94 cents per $100 of valuation, produced the amount sued for. A fuller detail of the character, corporate status and purposes of each of these litigants is unnecessary, in view of previous appeals as to taxes for former years, where such facts are shown. See Tex.Civ.App., 57 S.W.2d 627; Tex.Civ.App., 80 S.W.2d 1053; 129 Tex. 55, 102 S.W.2d 184.

Defendant Insurance Company, in the trial court, filed an answer to the above petition and, by first amended answer, of date May 1, 1937, plead, after general denial, that the District's valuation of $2,095,661.42, as of January 1, 1934, was correct, except that the Board of Equalization had arbitrarily and illegally increased the total of the Company's agency balances and premium notes (as rendered by it) from $354,811.54 to $398,876.66, or an excess of $44,060.12; further alleged illegal increases were: Interest due and accrued on mortgage loans, $78,146.51; interest accrued on collateral loans, $340.85; and interest accrued on bonds of the United States and Federal Agencies, $29,377.42; or a total excess of $148,776.82; whereby defendant's gross valuations subject to taxation should be only $1,946,884.61, from which the Company was entitled by law to make the following deductions: (1) For unpaid losses, $147,201.06; (2) for unpaid taxes, $65,000; (3) due other companies for reinsurance, $63,367.26; (4) reserve for unearned premiums, $1,603,668.04.

The Insurance Company further plead that, when the aforesaid illegal and excessive property valuations of $148,776.82 were eliminated from the total valuations of the Equalization Board, and the four amounts just enumerated taken off (as legal deductions), its remaining personal property subject to a school tax was only $67,648.25; pleading further that:

"* * * in order to do equity and to avoid becoming delinquent and in order to avoid this suit and in order to keep from having penalties and interest assessed against it, offered to pay to such School District taxes on $216,425. gross, or because of the fixed rule and custom of requiring taxpayers to pay taxes on only 60% of property rendered and assessed, the sum of $129,885.00, which would produce a tax of $1220.64, did on the 28th of January, 1935, tender to C. S. Guthrie, tax-collector of Highland Park Independent School District such sum of $1220.64 in currency of the United States of America, and asked him to accept the same and issue a receipt therefor in full of the personal property taxes of Republic Insurance Company for the year 1934; that the said C. S. Guthrie refused to accept such amount of $1220.64 and stated orally and in writing that he would accept no sum less than $11,819.53; that by virtue of its tender of $1220.64, Republic Insurance Company offered to pay taxes on more personal property than was subject to tax in such School District for the year 1934; that Republic Insurance Company has continued such tender and offer to pay such School District in such amount, and although Republic Insurance Company does not admit, but specifically denies that Highland Park Independent School District is entitled to collect such amount, Republic Insurance Company nevertheless here and now tender absolutely, unreservedly and unequivocally into the registry of this Court the sum of $1220.64, and has deposited with the District Clerk of Dallas County, Texas, such sum of $1220.64 in carrying out such tender, and by virtue of such absolute tender, Republic Insurance Company has discharged all of its obligation to plaintiff on account of taxes due plaintiff for the year 1934, and defendant asks the Court upon final hearing to decree to plaintiff such sum of $1220.64, and order plaintiff and its tax-collector to issue a receipt therefor in full of all of defendant's taxes to such School District for the year 1934.

"Wherefore, premises considered, defendant prays that upon final hearing this Court enter judgment fixing the amount of taxable personal property of Republic Insurance Company for the year 1934 in an amount not to exceed the sum of $216,-

425.00 gross, and $129,855 net, and the taxes collectible thereon not to exceed the sum of $1220.64, and that the Court decree such amount of $1220.64 herein tendered and heretofore deposited with the Clerk of this Court to the plaintiff, and that the Court in its order command the plaintiff School District and the tax-collector to issue a receipt to defendant for its taxes for the year 1934 * * *."

On September 9, 1937, plaintiff School District, in first amended petition filed, admitted that the item of $1,603,668.04, being reserves for unearned premiums, was tax free, by reason of a Supreme Court decision, leaving a balance of taxable property of $491,993.39; which, with the customary 60% deduction, would produce $2,774.84, for which it sued with penalties and interest. By way of supplemental petition, plaintiff District urged many exceptions to the pleadings of defendant company, on account of which, apparently, a second amended answer was filed of date September 14, 1937, when the cause came on for a jury trial with announcement of ready by both parties. The defenses of defendant, as renewed in its pleadings above mentioned, were the same substantially as it had first pleaded; likewise, as to allegations of unconditional tender of $1220.64, based upon valuations in "an amount not to exceed $216,425.00". A special exception of the plaintiff District was urged and sustained by the Court to defendant's affirmative defense of illegal and excessive over-valuations, in the amount of $151,891.32 (being the same item as $148,776.92 in its former pleading), on the ground of inconsistency with the terms of the tender, wherein a larger amount of valuations ($216,425) was admitted to be available for assessment under the tender, as the minimum valuation at issue; leaving as the sole amounts in controversy the taxability of the reserves for taxes ($65,000); reserve for reinsurance ($63,367.26); and reserve for unpaid losses ($147,201.06). Many other exceptions were urged by both parties to the pleadings of each, and defendant company was given leave to amend, plaintiff filing a trial amendment, admitting that interest due and accrued on United States bonds, Farm Loan & Joint-Stock bonds were not taxable, and that its suit was excessive to the extent of $173.16, of the sums theretofore claimed. Then was filed a third amended answer on September 16, 1937, in which were allegations similar to those of earlier pleadings as to the non-taxability of the reserves numbered 1, 2 and 3 above; also renewing and repleading all of the defenses of the alleged void, unlawful and arbitrary action of the Board of Equalization, in excessively valuing certain credits in the amount of $148,776.82; and, after reciting the facts of the previous tender, made new allegations as to the cash payment already in court, that same was again tendered "upon the sole condition that said sum was in full payment and satisfaction of its liability for taxes on its taxable personal property for the year 1934"; and, referring to the amount of $216,425, alleged that: " * * * on which valuation it was willing to pay rather than to be annoyed and harassed by litigation, and which it has at all times sought to pay, and is now willing and able to pay, and hereby retenders said sum of $1220.64 now in the registry of this Court as full payment of said tax liability to Highland Park Independent School District on all its (personal property) for the year 1934". Defendant's last pleading, just quoted from, concluded with the prayer: "Wherefore, premises considered, defendant prays that upon final hearing this Court entered judgment fixing the value of all the taxable property of the Republic Insurance Company in Highland Park Independent School District for the year 1934 in an amount not to exceed $216,425.00 gross and $129,855.00 net, and the amount of taxes collectible thereon not to exceed the sum of $1220.64, and that the Court decree that such amount of $1220.64, heretofore and herein tendered and heretofore deposited with the clerk of this Court, belongs to the plaintiff, and that the Court in its order require the plaintiff School District and its Tax Collector to issue to the Republic Insurance Company its tax receipt in full for all its taxes on its personal property for the year 1934 * * *."

Plaintiff District renewed its exceptions to that part of defendant's pleadings last filed, wherein the Equalization Board was charged with fraudulently, arbitrarily and without lawful warrant, over-valuing certain items to the amount of $148,776.82, on the same grounds as urged to similar matters in defendant's second amended answer; for the reason, among others, that such allegations were wholly inconsistent with defendant's plea of unconditional tender, as theretofore plead, "to which plaintiff had never addressed an exception and which the court had never disturbed in any

788

way, and on which no permission has been given or could under any rule of law be given to file an amendment". This exception being again sustained by the court, the case proceeded to a jury trial, the sole issues being the taxability, or rather, the right of the Insurance Company to deduct from its taxable values the three items of reserve—one, two and three—already enumerated, in the total amount of $275,568.32. At the close of the evidence, both plaintiff and defendant filed motions for an instructed verdict, that of plaintiff district was granted, and the jury instructed to return a verdict for plaintiff in the sum of $3,314.83, being taxes, penalties and interest on the taxable property in suit (including the three reserves) for the year 1934, with foreclosure of lien as prayed. The tender of $1220.64 was credited on the amount as fixed in the instructed verdict, and judgment given against the Insurance Company for the balance; to which due objections and exceptions were taken, with the result of this appeal.

Appellant's 49 assignments of error and 40 propositions in support, complaining of many errors of the trial court, are strongly presented in 362 pages of brief (main and reply); while appellee's main responsive thesis embraces 187 pages; supplemented by two replies. The transcript covers 287 pages; the statement of facts a mere 217 pages; additional thereto, however, are properly brought up many original instruments in evidence at the trial. In contrast, the difference in sums finally sued for and the amount of appellant's tender was around $1500. While we are fully appreciative of the services of the parties at interest, in their exhaustive efforts in aid of a correct solution of the many law points here raised, yet, we are mindful of the language of the illustrious Chief Justice Lamm, of Missouri, in a celebrated case, when he remarked that, "However, if the amount at stake is small, the value of the case for doctrine's sake is great".

The contentions of appellant under its various propositions, in substance are: (1a) The terms of the tender in the third amended answer (on which the case was tried) being conditional and not accepted, the Insurance Company was not precluded from defending against plaintiff's entire cause of action, in an effort to show that it did not owe the amount sued for, though it may owe the sum tendered, or less; (b) in no event should penalties and interest have been assessed on the sum tendered; (2) the court erred in sustaining exceptions to its defenses of excessive and arbitrary valuations found in the Equalization Board's final order, on the ground of inconsistency in the language of its third amended original answer of conditional tender, and that contained in the second amended original answer of unconditional tender; the claim being that such former pleadings had been superseded and were no longer in the case; (3) the School District failed to make out a prima facie case of tax liability in any amount, because based on inadmissible and insufficient documentary and oral evidence; (4a) failure of the Board of Equalization and the trial court to hear evidence on the valuation of credits under Art. 7163, R.S., wherein "No person shall be required to list or render a greater portion of his credits than he believes will be received or can be collected * * *"; (b) or to permit a deduction from the debts due to it of its debts due to others, under Art. 7147; (5) when the Equalization Board, in its final order on defendant's valuations, had attempted to tax the unearned premium reserve of $1,603,668.04 and $24,336.78 in United States Government and other exempt bonds, in disregard of Art. 5057a, R.S., Vernon's Ann.Civ.St. Art. 5057a, and the Federal statutes, even though such items and values were later eliminated from the pleadings of the School District, yet the court should have heard evidence thereon to show the alleged arbitrary, unreasonable and unwarranted attitude and action of the Equalization Board on all matters and items in dispute; (6) the District Tax Assessor's assessment and the Board's order so insufficiently and illegally described the property assessed and equalized as to invalidate the judgment of the trial court thereon; and (7) urging the correctness, prima facie, of the company's tax rendition as made to the District's Tax Assessor, and as supported by evidence at the hearing before the Equalization Board; and there being no evidence of a greater value, any action or judgment increasing valuations was void, and the tax-payer's valuations were the only lawful figures upon which taxes could be collected.

The general contentions of the School District are that, at the time of the unconditional and absolute tender by defendant of $1220.64, on admitted gross valuations of $216,425, that plaintiff was only suing for taxes on general valuations of $491,-

993.39, composed of the three reserves already referred to, in the amount of $275,-568.32 (which defendant had been at all times asserting its right to deduct), and $216,425.06 on other taxable property; that defendant made absolute tender of $1220.64 taxes due on the amount of valuations just above named, and was thereby estopped from disputing or litigating the valuations embraced in such amount, or the gross valuations of the Equalization Board of $2,095,-661.42, on which the entire tender was obviously based. Also, that the three items of reserve, the taxability of which were wholly in dispute, were not exempt under Art. 5057a, R.S.; the defendant company being precluded by mere bookkeeping entries from claiming money and property tax-free on the taxable date, under allegations that it had reserved and expected to use such funds at some future time to pay taxes, losses and reinsurance.

Though it may be a tiresome repetition of figures, as to all of which we have already been compelled to make reference many times from this voluminous record, but which we desire to make clear in support of the conclusion reached, we will say that, as heretofore shown, the taxes claimed by plaintiff District to be due were based upon the Equalization Board's gross valuation of $2,095,661.42. It is further clear from a study of all pleadings above referred to, that the items composing these total valuations, after being described in insurance terms, were:

(Company's)
| | | |
|---|---|---|
| (1) Reserve for unpaid losses | $ | 147,201.06 |
| (2) Reserve for unpaid taxes | | 65,000.00 |
| (3) Due other companies for reinsurance .......... | | 63,367.26 |
| Reserve for unearned premiums ........... | | 1,603,668.04 |
| Additional property values making up gross total ................ | | 216,425.06 |
| Equalization Board's total valuations and basis of suit .............. | | $2,095,661.42 |

It is necessary to determine here whether defendant's tender when first made, was with reference to any particular portion of its property; and we think it undoubtedly pertained to and embraced the valuations in suit, above the taxability of the three familiar reserves, which were at all times at issue; and when defendant contends the tender was not on any specific kinds or items of property, it refers to the last or conditional tender, which may be considered an offer of compromise, refused by plaintiff. The testimony of Mr. McCrary, defendant's Assistant Secretary and Officer Manager, we believe, is conclusive as to what taxes the deposit was intended to cover at the time of the profert in curia. When asked, "Do you intend to pay any taxes on the three reserve items, that we have been talking about here, with this tender to Mr. Guthrie and the tender into court?", he answered, "I don't know how else to answer it. We tendered the $1220.-64 in payment of all taxes, *after deducting these three items*" (italics ours). The nature of the original tender (being unconditional) admitted the correctness of the valuations that produced the amount so deposited; and by such payment defendant waived any alleged irregularities in the assessment of the District Collector or the action of the Equalization Board, in increasing the valuations on the property which it thus conceded to be taxable. "By tendering part of the taxes claimed the taxpayer admits the justice of the tax to the extent of the amount tendered, and is estopped from disputing his liability to that extent." 40 Tex.Jur., Taxation, page 178 sec. 128; City of Rising Star v. Dill, Tex. Civ.App., 259 S.W. 652, 655; Republic Ins. Co. v. Highland Park Ind. School Dist., Tex.Civ.App., 57 S.W.2d 627; State Fair of Texas v. Seay, Tex.Civ.App., 98 S.W.2d 232; 26 R.C.L. p. 650, secs. 32, 33; LaRault v. Palmer, 51 Wash. 664, 99 P. 1036, 21 L. R.A.,N.S., 354, and note. And, if the initial tender (unconditional and absolute in terms) could not be later amended or modified into one conditional in form, defendant was precluded from asserting any defense of arbitrary, fraudulent and excessive valuations in fixing the sum of $2,095,661.-42 as the general valuation of its property and the basis of plaintiff's cause of action. It will be noted that plaintiff's suit was simply one for taxes alleged to be due on defendant's personal property valuations for a designated year, and defendant's answer contained no alternative counts; and as a defense to such suit and claim of liability, defendant plead the amount of the unconditional tender in its second amended answer, in full payment and satisfaction of such taxes; and with other allegations under which it asserted the three reserves were exempt and non-taxable. When exceptions are sustained to other and incon-

sistent defenses in such answer, by reason of the above tender contained therein, can defendant then by amendment change his profert in curia to a conditional deposit, or tender in the nature of a compromise, not admitting any general liability? We think not. "The payment of money into court as an unconditional tender passes the title to the money so paid irrevocably to the party to whom it is tendered, though he does not accept the tender, or does not accept it until after judgment has gone against him * * *." 26 R.C.L., Tender, page 656, sec. 40; and from the same authority, we quote (sec. 41): " * * * The transfer is complete, and cannot be changed without consent, or a decree in equity, from the moment the court takes control of the money. Acceptance by the court for the plaintiff has the same effect as acceptance by the plaintiff himself · * * *. The court has no power on granting an order permitting an amendment to the answer to authorize the withdrawal of money paid into court on a tender, for power to amend a pleading is simply power to change the issues which control the admission of evidence, and it cannot of itself change the title to property, or transfer to the defendant that which previously belonged to the plaintiff. This is not the office of a pleading and cannot be held an incident thereto. Pleadings define the issues, but do not try them. While a party may by amendment be relieved from an inadvertent admission in his answer, he cannot thereby be relieved from the effect of an act which, wholly independent of his answer, irrevocably transferred the title to money. A party by his pleading admits or asserts a right, but when by his act outside of his plea he transfers a right, he cannot by amendment revoke the transfer * * *." Mann v. Sprout, 185 N.Y. 109, 77 N.E. 1018, 5 L.R.A.,N.S., 561, 7 Ann.Cas. 95; and see annotation under "general rule" following Levin v. Goodman, 107 N.J.Eq. 473, 153 A. 476, 73 A.L.R. 1281.

■ It is only where one is seeking affirmative relief in contrast to defending against a claim (as is defendant's position in the case at bar) that title to the deposit remains in the tenderer subject to the outcome of the suit. · 26 R.C.L., Tender, sec. 42; 40 Tex.Jur., Tender, p. 885, sec. 18; Texarkana & St. F. Ry. Co. v. Brinkman, Tex.Civ.App., 288 S.W. 852, affirmed Tex. Com.App., 292 S.W. 860. Defendant company argues that, either its tender, as made, was conditional, that it was to be in full of all liability, or was no tender at all; citing Coltrane v. Peacock, Tex.Civ.App., 91 S.W. 841, together with other impressive authorities and cases. These we will not discuss separately, concluding them not to be altogether in point with the facts in hand, holding either that a tender does not affect liability beyond the amount in court; or being, in their particular facts, exceptions to the general rule, as indicated in 73 A.L.R. page 1281, annotations. Coltrane v. Peacock, supra, is there cited as an exception, the plaintiff in such case having refused the money· tender before and after suit. The case last cited has also been classed as one wherein a tender was a prerequisite to the enforcement of a right. See Phipps et al. v. Watson, 108 Fla. 547, 147 So. 234, where many authorities are cited, in support of the well settled rule set out in 26 R.C.L., supra.

■ Appellant contends, under propositions 7 and 8, that it is entitled to plead an invalid assessment, and void over-valuations, in the face of absolute tender, under the rule of inconsistent defenses; citing Arts. 2001–2006, R.S., and Houston, E. & W. T. Ry. Co. v. DeWalt, 96 Tex. 121, 70 S.W. 531, 97 Am.St.Rep. 877. As has already been pointed out, plaintiff's petition was on a single count or declaration for taxes, to which defendant replied by general denial, alleging items of gross over-valuations and an unequivocal tender of the taxes due on $216,425 in personal property, which we say included the items that had already been characterized as over-valuations. Quotations from appellant's main brief, alone, should sufficiently demonstrate that this sort of an inconsistent defense is not tenable under the law of tender, as applied to the instant case. In Wilson v. Doran, 110 N.Y. 101, 17 N.E. 688 (discussing tender), the court said [page 689]; "But we understand the authorities to hold that the admission, in such a case, goes no further, and that it is open to a defendant to defend against any claim by the plaintiff beyond the sum tendered, upon any ground consistent with an admission of the original contract or cause of action." Also see Heller v. Katz, 62 Misc. 266, 114 N.Y.S. 806; and in Young v. Borzone, 26 Wash.· 4, 66 P. 135, 421, is quoted [page 423]: "We think a plea continuing a tender, made before the action was brought, under the facts as disclosed in this case, goes only to the extent of admitting that a contract of the general nature pleaded was entered into,

not that the plaintiff has correctly pleaded the contract; and after such a tender and plea the defendant cannot deny in toto any contract under which he became obligated to pay the amount tendered. Simpson v. Carson [11 Or. 361], 8 P. 325." 26 R.C.L. Tender, supra, sec. 33 says: "In an action based on contract it is the rule in several jurisdictions that the tender and payment into .court admits only the cause of action as to the sum tendered, and does not pre-clude the defendant as to any defense he may have against a further recovery, so far as such defense is consistent with the admission of the original answer or cause of action. The defendant may, notwith-standing, insist upon the statute of limita-tions, payment beyond the amount ten-dered, or other defense; *but he cannot rely on a general denial*" (italics ours); citing the case in appellant's brief of La-Rault v. Palmer, 51 Wash. 664, 99 P. 1036, 21 L.R.A.,N.S., 354.

■ Likewise, the court did not err in looking to the allegations of the super-seded second amended original answer, so as to determine the true· character of de-fendant's initial tender, though such prior pleadings were not otherwise in evidence; this being the gist of appellant's ninth proposition. This feature of its defense had not undergone any .change in status (no exception having been addressed there-to, or consent given to amend it); was still absolute and unconditional; and was prop-erly considered by the trial court in making the ruling complained of. In passing upon demurrers, the court can take . judicial knowledge of previous orders, judgments and decrees made and had in the progress of the case, and upon such knowledge sus-tain exceptions. Carr v. Cleveland et al., Tex.Civ.App., 86 S.W.2d 858, writ refused, and authorities; the same rule applying in appellate courts, 17 Tex.Jur., Evidence, p. 201 sec. 27; Griffith v. Tipps, Tex.Civ. App., Dallas, 69'S.W.2d 846. Besides, the trial court had sustained similar exceptions to identical allegations in defendant's second original amended answer, and all of such rulings are properly in the record for the reviewing court, together with the lan-guage of the tender, as first made.

■ Assuming, however, the absence of any such tender in defendant's pleading, were the actions of the tax officials (the assessment and judgment of the Equaliza-tion Board) vulnerable to the assault made thereon by appellant? This, we must de-termine from the record as a matter of law, in view of the trial court's peremp-tory action. Before February 1, 1934 the Insurance Company made out and de-livered to the Assessor of plaintiff District a sworn inventory of its properties, the latter official refusing to accept the same, claiming it was inaccurate and incomplete; and served notice of his intention to make up a list of property for assessment pur-poses that would include omitted or un-rendered items; attach proper valuations to other items, and restore still other values that such assessor contended had been unlawfully deducted. This the as-sessor proceeded to do, on November 15, 1934, delivering his inventory and assess-ment to the defendant's secretary the fol-lowing day; the certificate thereto indicat-ing the defendant's dissatisfaction with it, though Mr. Crawford, the secretary, de-clined to make oath that the property valuations therein were excessive. Also there was attached to the assessor's amend-ed list a financial statement of defendant to the State Insurance Commissioner, covering its assets and condition of affairs on December 31, 1933, together with the rendition of property theretofore made by defendant to the assessor for tax purposes. Afterward, the District Board of Equaliza-tion met and an extended hearing cover-ing about ten days was had, with notice to defendant and the presence of all in-terested parties; the matter before it being the determination of defendant's property values on January 1, 1934 and the equaliza-tion thereof as previously listed, inven-toried and assessed by the District As-sessor in the above mentioned amended assessment. The judgment of the Board recites a full hearing and consideration of evidence offered by both sides, "showing or tending to show the reasonable fair market value of said company's personal property, the value of which was listed in said assessment and in dispute, both as a whole and as to each individual item as of January 1, 1934", detailing such equal-ized values, the sum total being $2,095,-661.42. The Equalization Board reduced the valuations of the District Assessor almost $750,00, but left on the assessment as taxable credits, over objection of de-fendant, certain items that had been re-ported to the Insurance Commissioner in its December 1933 financial statement. These consisted of increased agency bal-ances and premium notes, $44,059.82; (non-ledger assets) interest due and ac-

crued on bonds, $78,146.51; interest accrued on collateral loans, $340.85; and interest accrued on bonds, $29,377.42. Complaint was made by defendant at this hearing of willful discrimination against it in assessments higher than other similar property in the District, but such claims are not brought into this appeal; the charges of arbitrary, fraudulent and illegal action of the Board of Equalization being solely based on the inclusion by the Board in its final order of taxable values, the items just above listed and taken from defendant's own sworn financial statement to the Insurance Commissioner.

School districts are empowered to assess taxes under Art. 7, Sec. 3, Const. Vernon's Ann.St.; Arts. 2784–2791, R.S., Vernon's Ann.Civ.St. arts. 2784–2791; cumulative thereto being Art. 2758, R.S., Vernon's Ann.Civ.St. art. 2758. The district tax-assessor is given the same powers and duties with reference to tax assessments as "are conferred by law upon the city marshal of incorporated towns or villages", who, in turn, as to powers (Art. 1147, R.S.) is granted all of the authority that is prescribed in Ch. 5, Title 28, relating to cities, towns and villages. Vernon's Ann.Civ.St. art. 1026 et seq. 37 Tex.Jur., Schools, sec. 132 page 1013; Blewett v. Richardson Indep. School Dist., Tex.Com. App., 240 S.W. 529; Highland Park Indep. School Dist. v. Republic Ins. Co., Tex. Civ.App., Dallas, 80 S.W.2d 1053. The legal steps necessary to be pursued by the District Assessor in making up a valid assessment, and the District Board in equalizing values thereof, are clearly set forth by Judge Looney in the last cited case and need not be here restated. In the case before us, we think the requirements necessary to a valid assessment were complied with, both by the assessor and the Board, the former, in this particular, merely adding to his amended list as unrendered property the items so taken from defendant's financial statement. The county articles (7185, 7206, 7211, R.S.) were followed in effect, save as to the "immediately" or "at once" provisions concerning the time the official assessment shall be served upon the taxpayer for his approval, and notice of the filing thereof with the county Equalization Board for action within a specified time. This constituted no irregularity on the part of Mr. Guthrie, the assessor, under Blewett v. Richardson Indep. School Dist., supra, the

law covering assessments for taxation in incorporated cities and towns (to which independent school districts are conformable), being much less specific than the statutory provisions relative to assessments for county and state purposes; and does not a taxpayer, by fully participating in the later board hearing as to his assessment, waive any prior defects or irregularities therein? See Brundrett et al. v. Lucas, Tex.Civ.App., 194 S.W. 613. The list of the District Assessor, as handed to the Board, embodying the sworn financial statement of defendant, fairly supported the Board's valuations of all the items that defendant attacks as grossly over-valued. Thus, there was no lack of evidence before the Board, for, in said annual report to the Insurance Commissioner, the particular items appear as ledger and non-ledger assets, and are described as a part of the total admitted assets of the corporation. When the actions of the tax officials are regular, as here appears, the same are also final as to valuations, under the statute (Art. 1054, R.S.) and decisions, of which Druesdow. v. Baker, Tex.Com.App., 229 S.W. 493; Texas & P. Ry. Co. v. Harrison County, 54 Tex. 119; Menardville Indep. School Dist. v. Moser, Tex. Civ.App., 90 S.W.2d 578; and Blewett v. Richardson Indep. School Dist., supra, are but illustrative. Mere over valuation is no ground for interference by the courts; conclusively so where the tax tribunal has cited the owner to show cause why the increased valuations should not be assessed and fixed. Allen v. Emery Indep. School Dist., Tex.Civ.App., 283 S.W. 674. To justify court action, the showing must consist of an assessment by the Board that is absolutely illegal or something equivalent to fraud. Ramey v. City of Tyler, Tex. Civ.App., 45 S.W.2d 359. And excessive values, as evidence of fraud, must be so gross as that a court must conclude in law such valuations to be the result of dishonest judgment. See the well considered opinion of Judge Coombs, of the Beaumont Court of Civil Appeals, in Port Arthur Independent School Dist. v. Baumer, 64 S.W.2d 412.

Appellant's propositions numbers 31–35 assert grounds of error committed by the trial court, in refusing to hear evidence of other illegal and arbitrary acts of the District Board. They are, of necessity, overruled, by reason of the conclusions already reached in discussing the effect of the ten-

der and the validity of said Board's final order.

Propositions are also urged that the evidence on which the judgment for taxes are based consisted of inadmissible papers and insufficient testimony; also that the properties assessed are inadequately and illegally described. The individual tax sheets and documents pertaining to defendant's assessment were verified as correct by the Assessor, while a witness, the showing being well within proper requirements in tax cases. City of Rising Star v. Dill, Tex.Civ.App., 259 S.W. 652, affirmed, Tex.Com.App., 269 S.W. 769; Rachford v. City of Port Neches, Tex.Civ.App., 96 S.W.2d 167, writ refused. As to the alleged defective description of property assessed, the District Assessor and the Board seem to have followed the schedule in the rendition first turned in by defendant, and supplemental thereto, the language and figures of defendant's aforesaid financial report, which, in turn, was sworn to by an agent of appellant as a full and correct exhibit of all the company's assets. The taxpayer cannot complain when descriptions in the assessment are similar to those rendered or described by him. Denman v. State, Tex.Civ.App., 85 S.W.2d 252, 253; Moody v. Galveston, 21 Tex.Civ.App. 16, 50 S.W. 481; City of Rising Star v. Dill, supra.

A thorough study of the briefs justify the statement that the principal objective for which defendant is contending in this third legal battle between the parties is to demonstrate that the reserve for unpaid losses ($147,201.06), reserve for unpaid taxes, ($65,000), and reserve for reinsurance ($63,367.26), are deductible from the assessment of the tax officials and are tax-free. At least, around appellant's propositions 24–30, inclusive (complaining of the trial court's error in holding these amounts taxable), its heaviest artillery in authority and argument is directly centered. As heretofore stated, defendant's "reserve for unearned premiums" ($1,603,-668.04) was admitted by plaintiff to be nontaxable under the Supreme Court opinion of Republic Ins. Co. v. Highland Park Indep. School Dist., 129 Tex. 55, 102 S.W.2d 184, where Art. 5057a, R.S., was held constitutional. Judge German there clearly holds that the three other items denominated as reserves by appellant were not deductible, and were subject to taxation, to be assessed as other property in the District.

The three reserves in question here are precisely of the same class as those held by our highest court to be not exempt under the above article, which alone prescribes how the property of fire insurance companies shall be assessed for taxes, regulating the manner in which their properties shall be so dealt with in such connection, and informing the particular assessor as to how to require renditions from them. This article (5057a) has been fully quoted in previous appeals (Tex.Civ.App., 80 S.W. 2d 1053; 129 Tex. 55, 102 S.W.2d 184), and its language is quite familiar to those concerned. The reserve there deductible has been held to be the liability designated as "unearned premium reserve" in appellant's annual statement to the Insurance Commissioner, of date December 31, 1933, ($1,603, 668.04). Such is conceded by all parties, but appellant contends that Arts. 7147 and 7163, R.S., should apply to the remaining "reserves" after Art. 5057a is given the above construction. We think this statute, being a special one for the assessment of property belonging to fire insurance companies, excludes all other laws and methods that might be otherwise applicable. From the caption and emergency clause of the Act, together with its wording, the intention of the Legislature is clearly to this effect. Furthermore, the law has been construed adverse to appellant's contention in the carefully drawn and plainly stated opinion of Judge German, from which we quote, 102 S.W.2d 191: "From what we have said it follows that under the statute in question only the reserve for unearned premiums in the sum of $1,542,532.05 was deductible. As we understand, this is the sum which was allowed by the insurance commissioner in the annual statement filed as of date December 31, 1932, and was arrived at by taking 50 per cent. of the premiums received on all unexpired risks that had less than one year to run, and a pro rata of all premiums received on risks that had more than one year to run, after deducting the amount which had been paid by the defendant company for reinsurance. It is presumed that the amount paid for reinsurance will be accounted for as premiums received by other insurance companies. Regardless of a right to deduct the other items mentioned, to wit, reserve for unpaid losses, reserve for taxes, and reserve for reinsurance balances, in the absence of article 5057a, we are of the opinion that said article was intended to be exclusive, and only *the unearned premium*

*reserve* [italics ours], or reinsurance reserve, was deductible. The Legislature may have very wisely decided that the deduction of the reinsurance reserve was sufficiently generous, and was unwilling to allow deduction of other reserves, such as are above mentioned. We do not think taxes are deductible as a debt under article 7147, R.S.1925. See authorities, above cited, and the case of Tax Commission v. National Malleable Castings Company, 111 Ohio St. 117, 144 N.E. 604, 35 A.L.R. 1448, and annotation. * * * In our opinion, then, the deduction of the reserve for unpaid losses, the reserve for taxes, and the reserve for reinsurance balances, amounting in the aggregate to $291,740.93, was not allowable under article 5057a. * * *"

Appellant insists that penalties and interest should not apply, at least to the cash tender of $1220.64, paid into court on May 1, 1937. The three reserves being taxable, this deposit failed to the amount of taxes producible therefrom, in being a full tender of the taxes legally due. In such a situation, much as we would be inclined to disallow these demands, this relief cannot be afforded, under State v. Fulmore, Tex. Civ.App., 71 S.W. 418, holding that "in order to escape liability for the interest and penalties allowed by the statute, he [the taxpayer] should have tendered the amount of taxes legally due". See, also, Lufkin Land & Lbr. Co. v. Noble, 60 Tex.Civ.App. 30, 127 S.W. 1093; 40 Tex.Jur., Taxation, p. 178, sec. 128.

We conclude the trial court correctly disposed of the decisive questions raised on this appeal; and, after full consideration of appellant's assignments and propositions, the judgment below is, in all respects, affirmed.

Affirmed.